Filed 10/4/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B306383 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA461603) |
| v. | |
| THE NORTH RIVER INSURANCE CO. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Victoria B. Wilson, Judge. Reversed.

Jefferson T. Stamp for Defendants and Appellants.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

———————————————————

The North River Insurance Company (the Company) and Bad Boys Bail Bonds (collectively the North River parties) appeal the superior court's judgment against Bad Boys Bail Bonds in the amount of $6,118.78—representing the costs of extraditing the criminal defendant for whom the North River parties had posted a bail bond, with the Company as the surety and Bad Boys Bail Bonds as the Company's bail agent—plus administrative costs and interest. The North River parties contend the superior court lacked jurisdiction and the judgment is void not only because the bond had already been exonerated by operation of law when the defendant appeared in court but also because the court had no power to impose liability on Bad Boys Bail Bonds arising from the Company's undertaking set forth in the bond. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

The Company as surety and Bad Boys Bail Bonds as bail agent posted a $35,000 bail bond to secure the release from custody of Jamar Saunders. The bond, which identified the Company as undertaking Saunders's appearance and Bad Boys Bail Bonds as the Company's bail agent, was filed with the superior court on October 13, 2017.

On October 25, 2017 Saunders failed to appear. The superior court ordered the bail forfeited and issued a bench warrant in the amount of $160,000. The October 25, 2017 bail forfeiture filing identified the Company as the "surety/depositor." A notice of forfeiture of surety bond addressed to Bad Boys Bail Bonds was mailed by the court clerk on October 27, 2017 to the North River parties.

According to the superior court's minute order entry for April 30, 2018, "the bail agent" on that date filed a Penal Code

section 1305.4[1] motion to extend the 180-day appearance period with respect to the forfeiture of bail. On May 25, 2018 the court signed an order granting the motion "by Bail Agent," "Real Party in Interest, BAD BOYS BAIL BONDS," and ordered the 180-day appearance period extended by an additional period of 180 days from the date of the order to November 21, 2018.

On November 20, 2018 Bad Boys Bail Bonds, whom the court's minute order entry for that date again identified as the "bail agent," filed a section 1035, subdivision (e), motion for an order tolling time on the ground Saunders was in custody in Minnesota on local charges and thus "temporarily disabled by reason of illness, insanity, or detention by military or civil authorities" within the meaning of the statute. On December 14, 2018 the court ordered time on the bond tolled until March 22, 2019.

On March 20, 2019 Bad Boys Bail Bonds filed another section 1035, subdivision (e), motion for an order tolling time on the ground Saunders was being held in custody in Nebraska with a projected release date of August 22, 2019. On March 22, 2019 the court ordered time on the bond tolled until September 13, 2019. The court's March 22, 2019 minute order entry also stated, "At the expiration of the extension/tolling period, if the surety has not filed a timely motion to set aside the forfeiture and exonerate the bond, summary judgment shall be entered and the matter shall be calendared for the bond clerk at 10:00 a.m., on the following court day in accordance therewith. [¶] In addition, status hearing has been ordered to be calendared on 09/13/19."

---

[1] Statutory references are to this code unless otherwise stated.

3

On July 15, 2019 Saunders appeared in custody in Los Angeles Superior Court and pleaded not guilty to grand theft of an automobile (Pen. Code, § 487, subd. (d)(1)) (count 1), driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a)) (count 2), and fleeing a pursuing peace officer's motor vehicle while driving recklessly (Veh. Code, § 2800.2) (count 3). The court appointed counsel for Saunders, set a date for the preliminary hearing, recalled the bench warrant and set bail at $160,000. On July 29, 2019 Saunders pleaded no contest to counts 1 and 3. The court found him guilty of those two counts, dismissed count 2 pursuant to the plea agreement, and sentenced him to a state prison term of three years.

The court's minute order entry for September 13, 2019 stated the case was called for a motion to vacate bail/bond forfeiture. The minute order entry also indicated a deputy district attorney was present and appearing on behalf of the County of Los Angeles and another attorney, Bradley Petersen, was present and appearing on behalf of the "bail agency and surety." The minute order further stated, "Court reads, considers and grants the notice of motion and motion to vacate forfeiture and exonerate bail. Upon showing good cause: The motion to vacate forfeiture and exonerate bail is granted and [the bond] is vacated, reinstated, and exonerated. [¶] Court reserves jurisdiction for costs."

On October 29, 2019 the People filed a section 1306, subdivision (b), motion to recover extradition costs in the amount of $6,118.78 from Bad Boy Bail Bonds. In their motion the People explained the Los Angeles County District Attorney's Office had been notified on April 15, 2019 that Saunders was in custody in Nebraska. At that time the district attorney's office

4

had made the decision to extradite Saunders, and efforts to bring him back to Los Angeles County had commenced. In their motion the People further stated that, on July 11, 2019, two officers of the Los Angeles Police Department had extradited Saunders from Nebraska to Los Angeles County; on July 15, 2019 Saunders had appeared in court; and, because Saunders had been returned to court within the "exoneration period," the People were not opposed to the exoneration of the bond but nevertheless requested the court order Bad Boys Bail Bonds pay the actual cost of extraditing Saunders from Nebraska. Notice of the motion and the motion were mailed to "Jeff Stamp [¶] BAD BOY BAIL BONDS."

The court's minute order entry for December 13, 2019 again stated the case was called for a motion to vacate bail/bond forfeiture. The minute order entry indicated the same deputy district attorney who had appeared on September 13, 2019 was present and appearing on behalf of the County of Los Angeles and Petersen was present and appearing on behalf of the "bail agency and surety." The December 13, 2019 minute order further stated, "Court reads and considers the People's motion to award extradition costs. [¶] Motion is granted. Order has been signed and filed." The order signed by the court on December 13, 2019 provided in part, "Pursuant to Penal Code Section 1306(b) and prior to relief from forfeiture and exoneration of [the bail bond], Bad Boy Bail Bonds, is hereby ordered to pay $6118.78 which represents the actual cost of extraditing [Saunders] to Los Angeles from" Nebraska.

The court's minutes for April 9, 2020 stated copies of "this minute order" and the signed order for award of extradition costs were mailed to the district attorney's office, as well as to

5

"Jefferson T. Stamp [¶] Attorney at Law [¶] Bad Boys Bail Bonds."[2]

The court's minutes for May 15, 2020 yet again stated the case was called for a motion to vacate bail/bond forfeiture. The May 15, 2020 minutes indicated a deputy district attorney was present and appearing on behalf of the County of Los Angeles and Stamp was present and appearing telephonically on behalf of the "bail agency and surety." The minutes set forth the following language, which also appeared in the judgment signed and filed by the court on May 15, 2020: "Pursuant to Penal Code Section 1305.2,[3] thirty days having lapsed since formal notice was mailed, and no payment of extradition costs being received, this court makes the following order: [¶] It is ordered, adjudged, and decreed that summary judgment be entered against Bad Boys Bail Bonds for the amount of $6118.78 plus administrative costs

---

[2] The parties in their appellate briefing agree Stamp was the counsel for both the surety and the bail agent. A court minute order entry for March 27, 2020 indicated Stamp appeared on behalf of "the bail agency and surety" for a proceeding in the case at bar.

[3] Section 1305.2 provides, in part, "If an assessment is made a condition of the order to set aside the forfeiture of an undertaking, deposit, or bail under Section 1305, the clerk of the court shall within 30 days mail notice thereof to the surety or depositor at the address of its principal office, mail a copy to the bail agent whose name appears on the bond, and shall execute a certificate of mailing and place it in the court's file in the case. The time limit for payment shall in no event be less than 30 days after the date of mailing of the notice."

and interest."[4]  The minutes also stated copies of "this minute order" and signed judgment were sent to the district attorney's office and "Jefferson T. Stamp [¶] Attorney at Law [¶] Bad Boys Bail Bonds."  An additional entry for the May 15, 2020 minutes further stated an updated minute order had been mailed "on June 15, 2020" to the district attorney's office and to Stamp, "representing the bail agency and surety."[5]

## DISCUSSION

### 1. *Governing Law and Standard of Review*

"A bail bond "'is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.'"  [Citation.]  When the surety breaches the contract by

---

[4]  The phrase "It is ordered, adjudged, and decreed" was capitalized in the May 15, 2020 judgment.

The judgment, which referred on its caption page to sections 1305.2 and 1306, subdivision (b), also referred to the court's December 13, 2019 order that Bad Boys Bail Bonds pay $6,118.78 for the costs of extraditing Saunders from Nebraska to Los Angeles County, a March 27, 2020 request from Bad Boys Bail Bonds's counsel that formal notice of the costs awarded be sent, and the court clerk's sending formal notice of the costs awarded by mailing copies of the December 13, 2019 minute order and signed order for award of extradition costs to "Jefferson Stamp, Attorney at Law, Bad Boys Bail Bonds."

[5]  The May 15, 2020 minutes also contained the following language:  "Nunc pro tunc order prepared.  It appearing to the court that the minute order in the above entitled action does not properly reflect the court's order.  Said minute order is amended nunc pro tunc as of that date.  All other orders are to remain in full force and effect."

failing to secure the defendant's appearance, the bond generally must be enforced. [Citation.] The purpose of bail and of its forfeiture, however, is to ensure the accused's attendance and obedience to the criminal court, not to raise revenue or to punish the surety." (*People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 42 (*Financial Casualty*); see *People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 709 ["[w]hen a defendant who posts bail fails to appear at a scheduled hearing, the forfeiture of bail implicates not just the defendant's required presence, but constitutes a 'breach of contract' between the surety and the government"; "[u]ltimately, if the defendant's nonappearance is without sufficient excuse, it is the surety who 'must suffer the consequences'"].)

"'When a person for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare a forfeiture of the bond. (§ 1305, subd. (a).) The 185 days after the date the clerk of the court mails a notice of forfeiture (180 days plus five days for mailing) to the appropriate parties is known as the appearance period. (§ 1305, subd. (b).) During this time, the surety on the bond is entitled to move to have the forfeiture vacated and the bond exonerated on certain grounds, such as an appearance in court by the accused. (§ 1305, subd. (c)(1).)'" (*Financial Casualty*, *supra*, 2 Cal.5th at p. 42.)

If a defendant appears in court during the appearance period, the prior forfeiture of the bond must be vacated and the bond exonerated. (*People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 305 ["If the defendant appears during the 180-day period, 'the court shall, on its own motion at the time the defendant first appears in court on the case in which the forfeiture was entered, direct the order of forfeiture to be vacated

and the bond exonerated.  If the court fails to so act on its own motion, then the surety's or depositor's obligations under the bond shall be immediately vacated and the bond exonerated"]; see § 1305, subd. (c)(1);[6] see also *People v. Accredited Surety & Casualty Co.* (2018) 26 Cal.App.5th 913, 915-916, 919, 920 [summary judgment entered against surety upon expiration of the bond exoneration period reversed because, "upon defendant's appearance, the bail was exonerated by operation of law"; "'[t]he plain language of section 1305, subdivision (c)(1) requires the defendant to appear "in court,"'" "[w]ithin the exoneration period, defendant voluntarily appeared in court," and "[t]he court having failed to vacate the forfeiture and to exonerate the bail on its motion, by operation of law the forfeiture was vacated and the bail exonerated"]; *People v. Financial Casualty & Surety, Inc.* (2017) 14 Cal.App.5th 127, 133 ["[i]f the defendant appears or is

---

[6]      Section 1305, subdivision (c)(1), provides, "If the defendant appears either voluntarily or in custody after surrender or arrest in court within 180 days of the date of forfeiture or within 180 days of the date of mailing of the notice if the notice is required under subdivision (b), the court shall, on its own motion at the time the defendant first appears in court on the case in which the forfeiture was entered, direct the order of forfeiture to be vacated and the bond exonerated.  If the court fails to so act on its own motion, then the surety's or depositor's obligations under the bond shall be immediately vacated and the bond exonerated.  An order vacating the forfeiture and exonerating the bond may be made on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."  Section 1305, subdivision (i), provides, "As used in this section, 'arrest' includes a hold placed on the defendant in the underlying case while he or she is in custody on other charges."

returned to custody within the appearance period, no motion for relief is necessary by the surety"].)

If the trial court extends the appearance period, as it is authorized to do, the defendant's appearance during the extended period also requires vacating the forfeiture and exonerating the bond. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 658 ["[t]he trial court may also toll the appearance period under certain circumstances, or extend the period by no more than 180 days from the date the trial court orders the extension"]; see §§ 1305, subd. (e) [providing for "tolling of the 180-day period provided in this section" under certain circumstances], 1305.4 ["[n]otwithstanding Section 1305, the surety insurer, the bail agent, the surety, or the depositor may file a motion, based upon good cause, for an order extending the 180-day period provided in that section"; "[t]he court, upon a hearing and a showing of good cause, may order the period extended to a time not exceeding 180 days from its order"]; see also *People v. Tingcungco* (2015) 237 Cal.App.4th 249, 253 [if the section 1305.4 motion for an extension of the appearance period is granted, "the defendant's appearance during the extension period also requires vacating the forfeiture and exonerating the bond"]; *People v. Lexington National Ins. Co.* (2010) 181 Cal.App.4th 1485, 1492 ["[t]olling would have allowed the opportunity for a hold to be placed with the Virginia authorities, which presumably then would have resulted in the defendant's return to the jurisdiction of the California courts and in the exoneration of the bail bond"].)

When a bond is forfeited and "[i]f the forfeiture has not been set aside by the end of the appearance period, inclusive of any extension, 'the court which has declared the forfeiture shall

enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound.'" (*People v. The North River Ins. Co.* (2020) 53 Cal.App.5th 559, 563; see § 1306, subd. (a).) "We must strictly construe the applicable forfeiture statutes in favor of the surety to avoid the 'harsh results' of forfeiture." (*The North River Ins. Co.*, at p. 564.) "If a court grants relief from bail forfeiture, it shall impose a monetary payment as a condition of relief to compensate the people for the costs of returning a defendant to custody pursuant to Section 1305, except for cases where the court determines that in the best interest of justice no costs should be imposed. The amount imposed shall reflect the actual costs of returning the defendant to custody. Failure to act within the required time to make the payment imposed pursuant to this subdivision shall not be the basis for a summary judgment against any or all of the underlying amount of the bail." (§ 1306, subd. (b).) "A summary judgment entered for failure to make the payment imposed under [section 1306, subdivision (b),] . . . shall apply only to the amount of the costs owing at the time the summary judgment is entered, plus administrative costs and interest." (*Ibid.*)

"'When the facts are undisputed and only legal issues are involved, appellate courts conduct an independent review.'" (*People v. The North River Ins. Co.* (2018) 31 Cal.App.5th 797, 804.) This includes "jurisdictional questions and matters of statutory interpretation." (*Ibid.*; see *People v. American Surety Company* (2020) 55 Cal.App.5th 265, 267 ["[t]here being no factual dispute, American's contentions receive our independent review"]; *People v. The North River Ins. Co*, *supra*, 53 Cal.App.5th at p. 563 ["when, as here, the facts are undisputed and the

matter raised is a question of statutory construction, our review is de novo"].)

2. *The Superior Court's Judgment Must Be Reversed*

a. *The judgment is void for lack of jurisdiction*

"'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.'" (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 660; see *People v. Safety National Casualty Corp.* (2007) 150 Cal.App.4th 11, 17 [where "the bail was exonerated by operation of law," "the trial court's order reinstating bail and its pronouncement of forfeiture of bail when Post failed to appear at the next scheduled hearing were void acts, as there was no obligation in existence that could be reinstated or forfeited"; "entry of summary judgment based on a void forfeiture order is a jurisdictional defect that may be raised for the first time on appeal"]; *People v. Amwest Surety Ins. Co.* (2004) 125 Cal.App.4th 547, 550, fn. omitted ["We conclude the trial court's failure to declare a forfeiture in open court, as mandated by section 1305, subdivision (a), resulted in the court's loss of jurisdiction over the bail bond. Because the court did not have fundamental jurisdiction when it entered the summary judgment, the judgment was necessarily void, and subject to collateral attack at any time"].)[7] "'Under the Penal Code, a court

_____

[7] "'[J]urisdictional errors can be of two types[:] A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely

12

has jurisdiction over a bail bond from the point that it is issued until the point it is either satisfied, exonerated, or time expires to enter summary judgment after forfeiture.'" (*American Contractors Indemnity Co.*, at p. 663; see *People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 595 ["[w]here the bond does not exist because it was exonerated, the court lacks fundamental jurisdiction, and any summary judgment purportedly entered on that bond is void"].)

Here, as ordered by the superior court, the end of the appearance period, inclusive of the 180-day extension and periods of tolling granted by the court, was September 13, 2019. Saunders appeared in court on July 15, 2019, well before expiration of the appearance period. At that time the superior court was required, on its own motion, to direct the order of forfeiture to be vacated and the bond exonerated, but neither the July 15, 2019 court minute order nor the reporter's transcript of the July 15, 2019 proceedings indicates the superior court had done so. Accordingly, not only were the Company's obligations under the bond immediately vacated but the bond was also exonerated by operation of law, pursuant to sections 1305, subdivisions (c)(1) and (e), and 1305.4, and the court no longer had fundamental jurisdiction over the then-nonexistent bond.

---

act in excess of its jurisdiction or defined power, rendering the judgment voidable.'" (*People v. The North River Ins. Co.* (2020) 48 Cal.App.5th 226, 233.) "Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.'" (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 661.)

Relying on *People v. National American Ins. Co.* (1995) 32 Cal.App.4th 1176, 1183-1184—which in turn cites *People v. American Bankers Ins. Co.* (1991) 233 Cal.App.3d 561, 566 and *County of Los Angeles v. American Bankers Ins. Co.* (1988) 202 Cal.App.3d 1291, 1293—the People argue reviewing courts have rejected an interpretation of Penal Code section 1305 requiring a court to vacate forfeiture and exonerate bail on its own motion immediately upon a return of the criminal defendant to custody or the defendant's appearance in court. *People v. American Bankers Ins. Co.* and *County of Los Angeles v. American Bankers Ins. Co.*, however, were both decided based on the 1985 amendment to Penal Code former section 1305 (Stats. 1985, ch. 1486, § 1). (See *People v. American Bankers Ins. Co.*, at pp. 565-567; *County of Los Angeles v. American Bankers Ins. Co.*, at pp. 1294-1295.) Unlike the most recent version of current Penal Code section 1305, effective January 1, 2017 (Stats. 2016, ch. 79, § 1), which is applicable to the case at bar, Penal Code former section 1305 as amended in 1985 did not provide that, if the defendant appears in court within the appearance period, the court must "on its own motion" direct the order of forfeiture to be vacated and the bond exonerated or that, if the court fails to do so, the surety's obligations under the bond "shall be immediately vacated and the bond exonerated." (Compare Stats. 1985, ch. 1486, § 1 [providing in part, at Penal Code former section 1305, subdivision (a), if the defendant appears and other conditions are met, "the court shall, under terms as may be just and that are equal with respect to all forms of pretrial release, direct the forfeiture of the undertaking or the deposit to be set aside and the bail or the money deposited instead of bail exonerated immediately"] with Stats. 2016, ch. 79,

§ 1 [amended language of Penal Code section 1305, subdivision (c)(1)].)

Penal Code former section 1305 was repealed in 1993, effective January 1, 1994.  (Stats. 1993, ch. 524, § 1; Assem. Bill No. 734 (1993-1994 Reg. Sess.).)  It was replaced by a newer version of Penal Code section 1305 that, at subdivision (c), added the "on its [the court's] own motion" language to the statute.  (Compare Stats. 1993, ch. 524, § 2 with Stats. 1990, ch. 1073, § 2; see *People v. Ranger Ins. Co.* (2000) 77 Cal.App.4th 813, 817, fn. 5; *People v. American Contractors Indemnity* (1999) 74 Cal.App.4th 1037, 1046-1047; see generally *County of San Bernardino v. Ranger Ins. Co.* (1995) 34 Cal.App.4th 1140.)  "[T]he 1993 amendment, which was effective January 1, 1994, established the . . . rule of surety law" that "'[e]xoneration of bail is automatic upon the surrender of a defendant, without the need of moving to set aside the forfeiture'"; "[t]he court has a duty to vacate the forfeiture on its own initiative and the surety is not required to make a motion." (*People v. American Contractors Indemnity*, at p. 1047.)

In addition, Penal Code section 1305 was amended again in 1994.  The 1994 amendment added the new subdivision (c)(1) provision, still present in the current version, which states that, if the defendant appears in court within the 180-day appearance period and the court fails to act on its own motion to direct the order of forfeiture be vacated and the bond exonerated, "then the surety's or depositor's obligations under the bond shall be immediately vacated and the bond exonerated."  (Compare Stats. 1993, ch. 524, § 2 (at Penal Code section 1305, subd. (c)) with Stats. 1994, ch. 649, § 1 (at Penal Code section 1305, subd. (c)(1));

see Stats. 2016, ch. 79, § 1 (at Penal Code section 1305, subd. (c)(1)).)

*People v. National American Ins. Co.*, *supra*, 32 Cal.App.4th 1176, upon which the People rely, is not to the contrary. In that case the surety was notified the criminal defendant had failed to appear in court, the bondsman subsequently surrendered the defendant to the sheriff, and the surety brought a motion to vacate forfeiture of bail. In granting the surety's motion, the municipal court conditioned relief on the payment of the costs of returning the criminal defendant to custody. When the surety failed to pay the costs, the municipal court entered summary judgment against the surety for the full amount of the bond and denied the surety's subsequent motion to set aside the judgment. (*Id.* at p. 1179.) On appeal the surety argued the trial court had no authority to enter judgment for the full amount of the bond. The Third District disagreed and, relying on *People v. American Bankers Ins. Co.*, *supra*, 233 Cal.App.3d 561 and *County of Los Angeles v. American Bankers Ins. Co.*, *supra*, 202 Cal.App.3d 1291, affirmed the judgment, holding "the surety must meet the statutory conditions imposed by the trial court before forfeiture is vacated and bail exonerated." (*People v. National American Ins. Co.*, at pp. 1183-1184.)

Although *People v. National American Ins. Co.* was decided in 1995, the municipal court had granted the surety's motion and conditioned relief on the payment of costs in December 1992 (*People v. National American Ins. Co.*, *supra*, 32 Cal.App.4th at p. 1179); and the matter was decided under "[f]ormer section 1305" (*id.* at p. 1183). *People v. National American Ins. Co.*, aside from other factual and procedural dissimilarities, thus has no persuasive value for the case at bar.

16

Because Saunders appeared in court on July 15, 2019 within the appearance period, as extended and tolled, and the superior court failed at that time to direct the order of forfeiture vacated and the bond exonerated, the Company's obligations under the bond were immediately vacated and the bond was exonerated. The court's subsequent orders and judgment predicated on the purported existence of the already exonerated bond, including the court's belated attempt, if any, on September 13, 2019 to grant a motion to vacate forfeiture and exonerate bail and to reserve jurisdiction for costs, its December 13, 2019 order for award of extradition costs and the May 15, 2020 summary judgment imposing liability for the costs of extraditing Saunders plus administrative costs and interest,[8] are void for lack of jurisdiction.

---

[8]      In its December 13, 2019 order for award of extradition costs, the superior court ordered payment "[p]ursuant to Penal Code Section 1306(b) and prior to relief from forfeiture and exoneration of bail." Section 1306, subdivision (b), provides for imposition of "a monetary payment as a condition of relief to compensate the people for the costs of returning a defendant to custody" "[i]f a court grants relief from bail forfeiture." The December 13, 2019 order, as well as the subsequent summary judgment entered for nonpayment of the costs assessed in that order, were thus predicated on the superior court's mistaken premise the bond had not previously been exonerated by operation of law.

The People could have sought to enforce their right to reimbursement for the costs (if any) of returning a defendant to custody, as authorized by section 1306, subdivision (b), by requesting on July 15, 2019 when Saunders appeared in court that exoneration of the bond be conditioned on payment of the

17

b. *The issue of naming Bad Boys Bail Bonds in entering summary judgment is moot*

The bail bond, which was signed by the Company's vice-president and filed in the superior court on October 13, 2017, provided in part, "THE NORTH RIVER INSURANCE COMPANY hereby undertakes that the above-named defendant will appear in the above-named court on the date above set forth to answer any charge in any accusatory pleading . . . . [¶] If the forfeiture of this bond be ordered by the Court, judgment may be summarily made and entered forthwith against the said THE NORTH RIVER INSURANCE COMPANY for the amount of its undertaking herein as provided by Sections 1305 and 1306 of the Penal Code."

The People concede the superior court erred in entering summary judgment against, and imposing liability on, Bad Boys Bail Bonds, but argue the appropriate response to the error is to remand the matter for the superior court to correct the order and judgment. (See *People v. Landon White Bail Bonds* (1991) 234 Cal.App.3d 66, 76-79.) Because the bond had been exonerated as a matter of law on July 15, 2019, the superior court lacked jurisdiction to impose liability for extradition costs against the Company on September 13, 2019, when it purported to reserve jurisdiction to do so, and when it made its subsequent erroneous orders. The issue of naming the proper party is moot.

---

expenses incurred for his extradition. (See *People v. The North River Ins. Co.*, *supra*, 31 Cal.App.5th at pp. 801-802.)

18

## DISPOSITION

The judgment is reversed.  The North River parties are to recover their costs on appeal.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.