Filed 12/8/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S229446 |
| v. | ) | |
| | ) | Ct.App. 2/5 B251230 |
| FINANCIAL CASUALTY | ) | |
| & SURETY, INC., | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. SJ003872 |
| _____ | ) | |

Penal Code section 1305.4[1] allows the period in which a bail bond may be exonerated by the accused's appearance, normally running 185 days from mailing of a notice the bond has been forfeited (§ 1305, subds. (b), (c)(1)), to be extended on a showing of good cause by up to 180 additional days from the court's order. The trial court in this case granted an extension for fewer than 180 days but, at the end of the extension period, denied the bond surety's second extension motion. The Court of Appeal affirmed that ruling on two grounds: (1) because the surety had not established a reasonable likelihood the requested extension would lead to the accused's return to custody, the trial court could reasonably find the surety had failed to show good cause for a further extension; and (2) under the case law interpreting section 1305.4, serious doubt exists as to whether the trial court even

---

[1]    Unspecified statutory references are to the Penal Code.

1

had the authority to grant a further extension, as at the time of the motion more than 365 days had passed since the bond was forfeited.

We conclude the Court of Appeal was correct on the first point but incorrect on the second. Because at the time the surety's second extension motion was heard fewer than 180 days had passed since the first extension was ordered, the trial court had discretion under section 1305.4 to grant a further extension. But the court did not abuse that discretion in considering, as grounds for denying an extension of the period for exonerating a bail bond, that the surety had not shown the requested extension was likely to produce the accused's appearance in court. As the Court of Appeal correctly found no abuse of discretion, we will affirm its judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 5, 2012, Financial Casualty & Surety, Inc. (Financial Casualty) posted a bail bond in the amount of $1,240,000 on behalf of Oscar Grijalva, who was charged with attempted murder and other felonies. Grijalva failed to appear at a pretrial proceeding on August 23, 2012, resulting in forfeiture of his bail and issuance of a bench warrant. A notice of forfeiture was mailed to Financial Casualty and its bail agent on August 24, 2012. Under section 1305, the forfeiture would be vacated and the bond exonerated if Grijalva appeared in court by the 185th day after the notice was mailed, February 25, 2013. (See § 1305, subds. (b), (c)(1).)

On February 20, 2013, five days before the appearance period ended, Financial Casualty filed a motion to extend the period under section 1305.4, supported by a declaration from Cesar McGuire, the lead investigator assigned by Financial Casualty to apprehend Grijalva. McGuire detailed the efforts he and his team of recovery agents had undertaken to find Grijalva, beginning on August 22, 2012, when Grijalva detached his ankle bracelet at an airport, and continuing

2

through February 4, 2013, when a website and Facebook advertisements offering a $100,000 award were published in the United States. In that period, McGuire pursued numerous leads in Southern California and Mexico provided by Grijalva's family members and acquaintances and by confidential informants. Although his investigation to that point had failed to locate the fugitive, McGuire stated he had "a tremendous amount of new leads" from people who had seen Grijalva in Guadalajara, Mexico, and in Orange and Los Angeles Counties, and that "with all the legwork that I have done on the case, I am confident that Oscar Grijalva will be apprehended and brought to justice."

The motion was heard and decided on March 20, 2013. On that date, the trial court ordered the appearance period extended to August 1, 2013.

On August 1, 2013, Financial Casualty filed a second motion to extend the appearance period, again supported by a declaration from McGuire. Since the period covered by his previous declaration, McGuire had offered Grijalva's sister a $100,000 reward for turning him in; received a call from a Mexican man who claimed to be Grijalva's cousin; received information about other Grijalva family members travelling to Mexico; tried unsuccessfully to contact Grijalva's mother; conducted surveillance on four residences in California without finding Grijalva at any of them; followed family members on a drive to Rosarito, in Baja California, but lost them there without seeing Grijalva; established or maintained law enforcement contacts in Baja California and thereby confirmed that a gang with which Grijalva was associated had a presence in Tijuana; and spoken with a reliable confidential informant who said Grijalva was staying in Tijuana and with a "US law enforcement officer" who said Mexican law enforcement had told him they had an informant who knew Grijalva. In this declaration, unlike his first, McGuire made no predictions or claims as to the likelihood of apprehending Grijalva.

3

The second extension motion was heard and denied on August 26, 2013. The trial court first stated that the 365 days of total appearance time the court believed allowed under section 1305.4 had "run out." After counsel for Financial Casualty argued the 180 days of allowable extension from the date of the prior extension order (March 20, 2013) did not expire until September 16 (allowing for the requested extension of 21 days from the hearing date), the court stated that any further extension was "discretionary" and would be denied for lack of good cause. To counsel's claim that Grijalva "is very close to being able to be returned to the court," the court responded: "There is no declaration that supports that. They think he's somewhere in Tijuana." On September 4, 2013, the trial court entered summary judgment on the bond.

The Court of Appeal affirmed. Following two earlier decisions, *People v. Accredited Surety & Casualty Co., Inc.* (2006) 137 Cal.App.4th 1349 (*Accredited*) and *County of Los Angeles v. Fairmont Specialty Group* (2008) 164 Cal.App.4th 1018 (*Fairmont*), the appellate court held that to establish good cause for an extension under section 1305.4, the surety must show not only that it had diligently sought to apprehend the defendant but also that it was reasonably likely to do so during the requested extension period. Here, Financial Casualty failed to show a reasonable likelihood of success if granted the extension: its agent, McGuire, "had been consistently unable to gather verifiable information about Grijalva or his whereabouts. Much of the information he obtained was false or proved fruitless. Despite his conversations with some members of Grijalva's family, it appears none were cooperating or had the slightest idea where Grijalva was, where he was likely to be or with whom. Not only had Grijalva's trail grown cold, it was nonexistent."

The Court of Appeal also expressed "serious doubt" section 1305.4 permitted a further extension, even if good cause had been shown. Relying on the analysis

4

in *People v. Taylor Billingslea Bail Bonds* (1999) 74 Cal.App.4th 1193 (*Taylor Billingslea*), the court below expressed agreement with the view that "the 180-day extension authorized by section 1305.4 is to be measured from the date the exoneration period would have expired in the absence of an extension, rather than from the date the court granted the extension; or in other words, 365 days from the mailing of the notice of forfeiture."

We granted Financial Casualty's petition for review, limiting the issues for briefing and argument to (1) whether an extension of the period to exonerate bail under section 1305.4 commences on the date on which the initial 180-day period expires or on the date on which the trial court grants the extension; and (2) whether the good cause standard under section 1305.4 includes consideration of a reasonable likelihood of success in returning the fugitive to court and, if so, which party bears the burden of proof on that question.

## DISCUSSION

A bail bond " 'is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.' " (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657 (*American Contractors*).) When the surety breaches the contract by failing to secure the defendant's appearance, the bond generally must be enforced. (*Id.* at pp. 657–658.) The purpose of bail and of its forfeiture, however, is to ensure the accused's attendance and obedience to the criminal court, not to raise revenue or to punish the surety. (*Id.* at p. 657.)

"When a person for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare a forfeiture of the bond. (§ 1305, subd. (a).) The 185 days after the date the clerk of the court mails a notice of forfeiture (180 days plus five days for mailing) to the appropriate parties is known as the appearance period. (§ 1305, subd. (b).) During this time,

5

the surety on the bond is entitled to move to have the forfeiture vacated and the bond exonerated on certain grounds, such as an appearance in court by the accused. (§ 1305, subd. (c)(1).)" (*American Contractors*, *supra*, 33 Cal.4th at p. 658, fn. omitted.)

In 1996, the Legislature added section 1305.4, allowing for an extension of the appearance period. (Stats. 1996, ch. 354, § 1, p. 2452.) Under section 1305.4 as it currently reads, the surety may move for an order extending the initial appearance period as follows: "The motion shall include a declaration or affidavit that states the reasons showing good cause to extend that period. The court, upon a hearing and a showing of good cause, may order the period extended to a time not exceeding 180 days from its order. A motion may be filed and calendared as provided in subdivision (j) of Section 1305." The referenced subdivision provides, in relevant part: "A motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause." (§ 1305, subd. (j).)

In addressing the trial court's denial of Financial Casualty's second extension motion, we first consider whether the trial court had the authority, under the above statutes, to grant a further extension to September 16, 2013. Concluding that it did have that authority, we next consider whether the court abused its discretion in declining to grant the further extension, and conclude the court acted within its discretion.

## I.  The Trial Court Had the Authority to Grant a Further Extension

The initial appearance period provided under section 1305 is 185 days from mailing of the notice of forfeiture. Section 1305.4 allows up to 180 days of extension. Under the reading of the statutes urged by the People and accepted by

6

the Court of Appeal, the sum of these two periods' lengths, 365 days, represents the maximum total appearance period a court may allow. But under section 1305, subdivision (j), and section 1305.4, an extension motion may be filed up to the end of the initial appearance period and heard up to 30 days afterward (or more, if the 30-day period is itself extended). If one measures the allowable 180 days of extension from the date of the extension *order*, as section 1305.4 on its face provides, the result can be a total appearance period longer than 365 days. Under this reading of the statutes, embraced by Financial Casualty, the maximum total appearance period is 185 days plus 180 days running from the court's extension order, which may be made up to 30 days after the end of the initial appearance period (or even later if the hearing period is itself extended).

In the present case, the initial 185-day appearance period ended on February 25, 2013. The surety's first extension motion was timely filed on February 20, 2013, but not heard and decided until March 20, 2013. On that date, Financial Casualty contends, the court could have ordered an extension of 180 days to September 16, 2013. The People, in contrast, argue the allowable 180 days of extension ran from the end of the initial appearance period, February 25, 2013, making the end point of the total allowable 365-day period August 24, 2013. By the time the court heard the surety's second extension motion on August 26, 2013, the People contend, it had no authority to order any further extension.

We agree with the surety on this point. Section 1305.4 provides that the trial court, on a motion to extend the initial appearance period, "may order the period extended to a time not exceeding *180 days from its order*." (Italics added.) This language plainly measures the allowable period of extension from the date of the trial court's extension order, not from the end date of the initial appearance period. Section 1305.4's reference to the court's "order" cannot reasonably be read as referring to the initial period's end date, which is in no sense an order.

7

The People's position rests primarily on *Taylor Billingslea*, *supra*, 74 Cal.App.4th 1193, in which the appellate court upheld the denial of an extension. In that case, the notice of forfeiture was sent on March 26, 1997, and the initial appearance period ended on September 27, 1997. (*Id.* at p. 1195.) The trial court granted the surety's bail agent several extensions, but on March 25, 1998—364 days after the notice of forfeiture was sent—the court denied its request for an additional one-week extension. (*Id.* at p. 1197.)

The appellate court rejected the bail agent's contention that section 1305.4 "permit[s] the trial court to grant an unlimited series of extensions as long as good cause is shown and no single extension is longer than 180 days." (*Taylor Billingslea*, *supra*, 74 Cal.App.4th at p. 1198.) The court instead read "its order" in section 1305.4 as referring to the initial extension order "so that the total of all extensions permitted under section 1305.4 cannot exceed 180 days." (*Taylor Billingslea, supra,* at p. 1198.) Rather than allow the 180-day limit to renew with each extension, and "drag the forfeiture period on indefinitely," the *Taylor Billingslea* court construed the statute as allowing "an extension of no more than 180 days past the 180-day period set forth in section 1305." (*Id.* at p. 1199.) The trial court therefore correctly determined it had no authority to grant an additional week's extension on the 364th day after notice of the bond's forfeiture was mailed. (*Ibid.*)

*Taylor Billingslea*'s statement of the limits on extensions as "no more than 180 days *past the 180-day period set forth in section 1305*" (*Taylor Billingslea, supra*, 74 Cal.App.4th at p. 1199, italics added) was a reasonable interpretation of section 1305.4 as it read in 1999, when the case was decided. At that time, sections 1305 and 1305.4 did not include the provisions, quoted above, allowing 30 days for hearing of an extension motion. (See *Taylor Billingslea*, *supra*, at p. 1198 [quoting the version of the statute applied].) As there was no provision for

an extension order to be made after the end of the initial appearance period, the *Taylor Billingslea* court reasonably equated the latest date for an extension order with the end date of the initial appearance period. Given that equation, the maximum allowable extension, which by the statute's terms runs 180 days from the court's extension order, could also correctly be described as 180 days from the end of the initial appearance period.

However, the equation implicit in *Taylor Billingslea*'s statement of the rule no longer holds. By a 1999 amendment, effective January 1, 2000, the Legislature added subdivision (i) (now subdivision (j)) to section 1305, providing that a motion made during the appearance period may be heard up to 30 days after the period's end; the amendment also added a cross-reference to that new subdivision in section 1305.4, bringing extension motions within its procedural rule. (Stats. 1999, ch. 570, §§ 2, 3, p. 3956.) The legislative history reflects a desire to "clarif[y] an ambiguity in existing law" by expressly allowing extension motions to be heard after the end of the initial appearance period (Assem. Com. on Public Safety, analysis of Assem. Bill No. 476 (1999–2000 Reg. Sess.) as introduced Feb. 18, 1999, p. 4), motivated by the recognition that "bail agents often are not aware that a defendant has absconded until very close to the end of the 180-day period," making it difficult to file an extension motion and have it heard before the period ends (Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 476 (1999–2000 Reg. Sess.) as amended Aug. 17, 1999, p. 4).

Two recent appellate decisions clarify the status of *Taylor Billingslea*'s description of the maximum appearance period after the 1999 amendment. In *County of Los Angeles v. Williamsburg National Ins. Co.* (2015) 235 Cal.App.4th 944, the court declined to rely on that description: "*Taylor Billingslea* was decided before the California Legislature enacted the 1999 amendment. We fail to see how a case decided before a statutory amendment became effective can

9

provide any guidance on its interpretation." (*Id.* at p. 951, fn. 7.)  The court in *People v. United States Fire Ins. Co.* (2015) 242 Cal.App.4th 991, 1007, expanded on this reasoning:  "In light of the fact that *Taylor Billingslea* was decided prior to the 1999 amendment to section 1305.4, it is not surprising that the Court of Appeal in that case took it for granted that the extension period would have to be measured from the end of the exoneration period, or from a date no later than that because, at the time *Taylor Billingslea* was decided, extension motions were generally heard and decided before the end of the exoneration period in order to preserve the trial court's jurisdiction.  [Citations.]  The 1999 amendment changed all that by providing a 30-day grace period for hearing an extension motion, thereby allowing the motions to be heard within 30 days after the expiration of the exoneration period.  As argued by Surety herein: 'Since hearings on extension motions may now be heard after the initial 180-days [*sic*] expires, and since the plain language of Section 1305.4 provides that extensions are measured from the date of the extension order, the *Taylor Billingslea* interpretation limiting time to "no more than 180 days past the 180 day period" is no longer applicable.  The rule is simply inconsistent with the court's ability to hear extension motions after the 180-day period expires under subdivision (j) [of section 1305].' "

We agree with these recent decisions.  Because the 1999 amendment materially changed the timing of orders on extension motions under section 1305.4, *Taylor Billingslea*'s description of the maximum extension as 180 days past the initial appearance period is no longer accurate.  Rather than apply the description of the maximum period in *Taylor Billingslea*, courts are bound by the plain language of section 1305.4, which allows a trial court to order an extension of up to 180 days "from its order."  (See *American Contractors, supra,* 33 Cal.4th

10

at p. 658 [describing the maximum extension as "180 days from the date the trial court orders the extension"].)**2**

Besides *Taylor Billingslea*, the People rely on *People v. Bankers Ins. Co.* (2010) 182 Cal.App.4th 1377 and *People v. Accredited Surety & Casualty Co., Inc.* (2013) 220 Cal.App.4th 1137. The first of these decisions echoes *Taylor Billingslea*'s description of the maximum extension period as 180 days beyond the initial appearance period, but does not consider the effect of the 1999 amendment to section 1305.4 and does not explicitly address whether the statutory 180-day extension limit is measured from the date of the court's extension order or from the end of the initial appearance period. (*People v. Bankers Ins. Co.*, *supra*, at p. 1382.) The second decision (*People v. Accredited Surety & Casualty Co., Inc.*, *supra*, at pp. 1147–1149) addresses the issue more extensively but nevertheless neglects to note that *Taylor Billingslea* predated the 1999 amendment or to explain how that court's formulation can be deemed to have survived the amendment. We find neither decision persuasive and disapprove both *People v. Accredited Surety & Casualty Co., Inc.*, *supra*, 220 Cal.App.4th 1137 and *People v. Bankers Ins. Co.*, *supra*, 182 Cal.App.4th 1377 to the extent they hold the 180-day extension period allowable under section 1305.4 runs from the end date of the initial appearance period rather than from the date of the court's extension order.

---

**2**    The *Taylor Billingslea* court was correct, however, in holding that the "order" referred to in section 1305.4's limit of extensions to 180 days "from its order" is the first order extending the period, rather than any subsequent order, and that the total allowable extension is thus limited to 180 days from the date of the first extension order, regardless of how many individual extensions the court orders. Allowing an unlimited series of extensions, each lasting up to 180 days, would be contrary to the text and purpose of section 1305.4, which clearly was intended to provide for a limited extension period of 180 days, not an indefinite one. (*People v. Granite State Insurance Co.* (2003) 114 Cal.App.4th 758, 768; *Taylor Billingslea*, *supra*, 74 Cal.App.4th at pp. 1198–1199.)

11

In the present case, the surety's first extension was granted on March 20, 2013. The maximum extension that could have been ordered was for 180 days from that date, ending on September 16, 2013. When the court heard the surety's second extension motion on August 26, 2013, therefore, it had the authority to order a further extension through September 16.

## II. The Trial Court Did Not Abuse Its Discretion in Denying a Further Extension.

Section 1305.4 permits an extension of the appearance period only on the surety's showing of good cause. Because the underlying policy of sections 1305 and 1305.4 is to avoid forfeitures and bring defendants before the court rather than to generate revenue for the county, the good cause showing has been described as a " 'low threshold' " for the surety. (*Fairmont*, *supra*, 164 Cal.App.4th at p. 1027, quoting *Accredited*, *supra,* 137 Cal.App.4th at p. 1358.) A trial court's determination whether the surety has shown good cause to extend the appearance period is reviewed on a deferential abuse of discretion standard; we reverse only if the trial court's decision is unreasonable. (*Fairmont*, *supra*, at p. 1028; *People v. Ranger Ins. Co.* (2000) 81 Cal.App.4th 676, 679–680 (*Ranger*).)

The parties here agree that one legitimate factor in determining good cause for an extension is the surety's diligence up to the time the extension is sought. If the surety or its bail agent cannot show it has so far been using reasonable efforts to locate the defendant and bring him or her to justice, the court has no obligation to grant the surety more time. (*Fairmont*, *supra*, 164 Cal.App.4th at p. 1027; *Ranger*, *supra*, 81 Cal.App.4th at pp. 681–682.)

The disputed issue is whether, in addition to past diligence, a trial court may look to whether the surety or its bail agent is reasonably likely, if granted the extension, to succeed in apprehending the fugitive defendant. Financial Casualty argues that past diligence should be enough to justify an extension, because

12

allowing the surety to continue its efforts maximizes the chance of returning the defendant to court, which is the goal of the bail bond system. The People, on the other hand, argue that granting an extension without a likelihood of success would be an idle act, whereas requiring such a showing gives the surety a greater incentive to develop and pursue *productive* investigative leads in the initial appearance period; without that incentive, the surety may initially do just enough to appear diligent.

The People, like the Court of Appeal below, cite the reasoning of the court in *Accredited*, *supra*, 137 Cal.App.4th at page 1357, which explained that the surety cannot be entitled to an extension "simply by demonstrating it exerted some effort. The inquiry must be prospective as well as retrospective; otherwise, an extension does not serve the statute's policy of returning fleeing defendants to custody. That policy is best served by the surety showing that another 180 days might be productive." For that reason, the *Accredited* court held that in addition to diligence, the court should consider "whether there is a reasonable likelihood of securing the attendance of the absent person." (*Id.* at p. 1358; accord, *Fairmont*, *supra*, 164 Cal.App.4th at p. 1029.)

We conclude that a court deciding a surety's motion to extend the appearance period may consider, as a factor tending to show lack of good cause, that the motion is unsupported by facts establishing a reasonable likelihood the extension will result in the defendant's apprehension. For a court to conclude that the likelihood the surety will actually be able to apprehend the defendant if granted more time is too remote to justify the extension is not unreasonable. As the People argue, the law does not require idle acts (Civ. Code, § 3532); requiring a court to grant an extension the court believes has no reasonable likelihood of leading to the defendant's presence would be, indeed, to require an essentially idle act.

13

Consequently, the court does not abuse its discretion in considering this factor and denying a request on this basis. (*Fairmont*, *supra*, 164 Cal.App.4th at p. 1029.)

Against this conclusion, Financial Casualty emphasizes that bail bond sureties and their agents are the principal means by which absconding defendants are brought to court and that they do eventually apprehend most defendants—at no cost to the public. The surety argues that "there is no countervailing interest of conserving judicial resources" when granting an extension; regardless of whether a likelihood of success can be shown, past diligence should therefore suffice to justify an extension.

We are unpersuaded that an extension has no cost. Extending the appearance period adds to the administrative burden on the court, at a minimum, by leaving the bond forfeiture matter pending longer, requiring additional record keeping and potentially additional hearings before judgment may be entered on the bond. The law does not require a trial court to extend the period and keep the file open on the bond forfeiture matter in the absence of any reasonable prospect doing so will result in the defendant's return to court. Moreover, a legal assurance that a showing of diligence alone will satisfy the good cause requirement would provide less of an incentive for sureties to promptly use their best efforts than a rule permitting consideration of likelihood of success. We agree with the *Accredited* court that the policy of promoting prompt return of defendants to court may be better served, under some circumstances, by looking to the likelihood of apprehension as well as to past diligence. (*Accredited*, *supra*, 137 Cal.App.4th at p. 1357.)

The surety cites two appellate decisions predating *Accredited*, in which good cause was addressed without any express requirement of a likelihood of success: *Ranger*, *supra*, 81 Cal.App.4th 676 and *People v. Alistar Ins. Co*. (2003) 115 Cal.App.4th 122 (*Alistar*). Neither supports the contention that to deny a motion

14

because no showing has been made the extension will likely lead to the defendant's apprehension is an abuse of discretion.

In *Ranger*, the appellate court held the trial court did not abuse its discretion in denying an extension motion supported by only a "bare-bones declaration" that failed to establish good cause for an extension because the declaration did not show "what efforts Ranger made to locate [the defendant] during the initial 180 days, and why such efforts were unsuccessful." (*Ranger*, *supra*, 81 Cal.App.4th at pp. 682, 681.) While the court's formulation of a good cause standard did not include a likelihood of success, the court also explained the declaration, which merely stated the defendant was believed to be at an address in Mexico, gave "no assurance such defendant might be placed in custody and extradited to the United States." (*Id.* at p. 681.) The holding of *Ranger* is merely that the trial court did not abuse its discretion in finding the surety's cursory declaration, which established neither diligence nor likelihood of apprehension, inadequate. The decision lends no support to the claim that the trial court here *did* abuse its discretion in denying an extension on the ground, in part, that no likelihood of apprehension was shown.

*Alistar* is procedurally more on point; the trial court denied an extension motion and the Court of Appeal held the denial to be an abuse of its discretion. (*Alistar*, *supra*, 115 Cal.App.4th at pp. 124, 129.) The appellate court's discussion, moreover, emphasizes the surety's diligence; its investigator "had made a concerted effort to locate defendant." (*Id.* at p. 128.) On the other hand, the court also noted that the investigator ended his declaration with the conclusion that "if granted an additional extension, he would be able to return defendant to custody," an assurance made plausible by evidence the defendant was in the Moreno Valley area and in communication with his sister, who agreed to pass a message to him from the investigator. (*Ibid.*) In light of those facts and the lack of any explicit statement in the decision to the effect that the likelihood of success

15

is irrelevant to good cause, we do not read *Alistar* as holding denial of an extension request on the ground the surety has not shown a likelihood of apprehension if the extension is granted is necessarily an abuse of discretion.

Financial Casualty further argues that the likelihood of apprehension is impossible to assess objectively and requires, in effect, that the surety "bring a fortune teller into court."  As we understand good cause, however, a trial court considering the likelihood of apprehension as a factor in the determination does not attempt to foresee the future but rather assesses, on the basis of the affidavits or declarations detailing the investigation to that point, how close the surety's efforts have brought it to finding the defendant and bringing him or her into custody and what further steps the investigators intend to take during the requested extension.  In light of the policy of avoiding forfeitures and favoring bringing defendants to justice, all that the court can demand is a showing of a reasonable likelihood of success, not a certainty or high probability, and the surety's declarations should be read liberally for inferences that would support good cause. Allowing courts to consider the likelihood of apprehension does not convert the good cause standard from a " 'low threshold' " (*Fairmont*, *supra*, 164 Cal.App.4th at p. 1027; *Accredited*, *supra,* 137 Cal.App.4th at p. 1358) into an impossible demand for clairvoyance.

In the alternative, Financial Casualty argues that if the likelihood of apprehension is considered a factor in the good cause determination, the burden should fall on the People, once the surety has shown its past diligence, to show an extension is unlikely to result in the defendant's apprehension.  Section 1305.4, however, clearly places the burden on the surety to support its extension motion with "a declaration or affidavit that states the reasons showing good cause to extend that period."  (See also Evid. Code, § 500 [party has burden of proof on fact essential to his or her claim for relief].)  No reason in fairness or policy is

16

apparent for shifting the burden on an aspect of good cause to the People, who are neither responsible for any difficulty the surety might have showing a likelihood of apprehension nor in exclusive possession of facts relevant to that issue. (Cf. *Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1226 [burden shifting appropriate when a party's wrongdoing "makes it practically impossible for the [other party] to prove its case."].)

Our conclusion that a trial court may weigh the likelihood of apprehension in deciding whether the surety has shown good cause for an extension does not imply the likelihood of apprehension must be considered in every case. The question is one within the trial court's discretion. There may be circumstances in which a court could reasonably find good cause, particularly for a short extension, despite a weak showing as to the likelihood of apprehension. The statutory policy is generally to avoid forfeiture, and a trial court would not necessarily abuse its discretion by allowing the surety a few more days or weeks even if there is little or no evidence establishing a likelihood of success.

Having already extended the appearance period 134 days from March 20, 2013, to August 1, 2013, the trial court could reasonably find good cause lacking for a further 46-day extension to September 16. The court found the surety's evidence failed to demonstrate Grijalva was likely to be apprehended during the requested extension, as the investigator's declaration merely showed "[t]hey think he's somewhere in Tijuana." To rely on the absence of proof an extension would be productive was not an abuse of the trial court's discretion.

17

**DISPOSITION**

The judgment of the Court of Appeal is affirmed.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Financial Casualty & Surety, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 239 Cal.App.4th 440
**Rehearing Granted**

_____

**Opinion No.** S229446
**Date Filed:** December 8, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Harvey Giss

_____

**Counsel:**

Law Office of John Rorabaugh, John M. Rorabaugh, Robert Tomlin White and E. Alan Nunez for Defendant and Appellant.

Peter A. Botz, Toni Martinson and Justin C. Pinney for Two Jinn, Inc., as Amicus Curiae on behalf of Defendant and Appellant.

Mary C. Wickham, County Counsel, Brian T. Chu, Principal Deputy County Counsel, and Lindsay Yoshiyama, Deputy County Counsel, for Plaintiff and Respondent.

Jennifer B. Henning and Janis L. Herbstman for California State Association of Counties as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John M. Rorabaugh
Law Office of John Rorabaugh
801 Parkcenter Drive, Suite 205
Santa Ana, CA  92705
(714) 617-9600

Robert Tomlin White
Law Office of John Rorabaugh
801 Parkcenter Drive, Suite 205
Santa Ana, CA  92705
(714) 617-9600

Brian T. Chu
Principal Deputy County Counsel
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, CA  90012-2713
(213) 974-1956