Filed 3/24/22  In re K.W. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re K.W., a Person Coming Under the Juvenile Court Law. | |
| | D079737 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J519714B) |
| v. | |
| S.W., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Conditionally reversed and remanded with directions.

Terence M. Chucas, under appointment by the Court of Appeals, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

S.W. (Mother) appeals from the juvenile court's orders terminating parental rights and ordering her son, K.W., be placed for adoption. (Welf. & Inst. Code, § 366.26.)[1] She contends the juvenile court erred when it found that the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) did not apply because the San Diego County Health and Human Services Agency (Agency) violated its initial duty of inquiry pursuant to section 224.2, subdivision (b), by not asking the reporting party, the paternal grandmother, and the maternal grandmother whether K.W. has Indian ancestry. The Agency contends that it conducted a sufficient inquiry. To support its contention that additional inquiry is unnecessary, the Agency requests that we augment the record to include prior juvenile court records involving the same parents and K.W.'s sibling, D.H. As we shall discuss, we deny the augmentation request, conclude that the Agency conducted an insufficient initial inquiry, and conditionally reverse the termination order.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2018, the Agency removed D.H. from Mother and Father, Mark H., due to domestic violence. In May 2020, the Agency removed K.W. from Mother after he tested positive for amphetamines at birth.[3] Prior to filing the petition on K.W.'s behalf, the Agency asked the parents about any

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     Because Mother's challenge on appeal is limited to ICWA compliance, we limit our recitation of the facts and procedural history to those necessary to determine that issue.

[3]     Father was incarcerated at the time of K.W.'s birth.

possible Indian ancestry.[4]  Both denied having any.  The social worker also noted that in 2018, the juvenile court found that the ICWA did not apply to D.H.  At the detention hearing, Mother's counsel stated that Mother has some Indian ancestry and the names of relatives, agreed that the ICWA had been found inapplicable in the sibling's case but expressed uncertainty regarding what had been explored.  The court detained K.W., deferred an ICWA finding to the next hearing, and ordered the Agency to investigate whether K.W. was an Indian child.

In June 2020, Mother informed the Agency that she was " 'Native American' " but had " 'very little percentage.' "  She reported that the maternal grandmother resided in Reno, Nevada.  At the jurisdiction hearing later that month, the juvenile court deferred ruling on the applicability of the ICWA.  At the contested jurisdictional and dispositional hearing in August 2020, Father's counsel represented that Father had no Indian heritage and Mother's counsel took no position on the issue regarding his client.  The Agency asked that the juvenile court find the ICWA inapplicable, referenced the prior finding in the sibling's case, and represented that the court had no information before it suggesting a reason to know that K.W. is an Indian child.  The court stated:

> "The fact that [ICWA] was not applied in another case, I
> don't think is really controlling, but mom initially denied it
> in this case and then she went sideways, so to speak, and
> kind of said 'Maybe, I'm not sure,' but never followed up on
> that and gave any specific information, which I take to
> mean that I have no reason to believe, reasonable reason to

---

4    The Agency initially identified two alleged fathers for K.W., but a subsequent paternity test identified Mark to be the child's biological father.

3

believe that ICWA applies in this case . . ., I'll find that ICWA does not apply subject, of course, to any changes in the future. But, at this point, I don't believe that ICWA applies."

The court's minute order found that the ICWA did not apply to the proceeding "subject to reversal based on the sufficiency of the evidence" and that reasonable inquiry had been made regarding Indian ancestry. At the contested six-month review hearing in August 2021, the juvenile court found without prejudice that the ICWA did not apply, it terminated Mother's reunification services and set a section 366.26 hearing. At the contested section 366.26 hearing in October 2021, the juvenile court again found without prejudice that the ICWA did not apply, it terminated parental rights, and ordered a permanent plan of adoption.[5] Mother timely appealed.

DISCUSSION

I. *GOVERNING LAW*

Congress enacted the ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) "In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019

_____

[5] K.W.'s caregiver has had him since birth and expressed a strong desire to adopt him.

4

[citation], and govern here." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.) Additionally, effective January 1, 2020, California Rules of Court, rule 5.481(a)(5), mandates that the Agency "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes."[6]

In dependency proceedings, the Agency and the juvenile court have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.) Current law obligates the court and child protective agencies to ask all relevant involved individuals, including the parents, extended family members, and the person who reported the abuse or neglect, "whether the child is, or may be, an Indian child." (§ 224.2, subds. (a) & (b).) The court is also required to ask of each person at their first appearance in court "whether the participant knows or has reason to know that the child is an Indian child" and to "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (*Id.*, subd. (c).) The court must also "[o]rder the parent . . . to complete Parental Notification of Indian Status ([Judicial Council] form ICWA-020) [Form ICWA-020]." (Rule 5.481(a)(2)(C), italics omitted.) Current law also provides that before a juvenile court can make a finding that the ICWA does not apply,

---

6        Undesignated rule references are to the California Rules of Court.

it must make a finding that "due diligence as required in this section have been conducted." (§ 224.2, subd. (i)(2).)

If the court or social worker has reason to believe that an Indian child is involved the social worker must, as soon as practicable, conduct further inquiry, including, but not limited to: (1) interviewing parents and extended family members; (2) contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership; and (3) contacting the tribes or any persons that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. (§ 224.2, subd. (e)(1)-(3).) Only if this inquiry establishes reason to know the child is an Indian child, must the Agency provide notice to the tribes by registered mail of the pending proceedings and their right to intervene. (§ 224.2, subd. (f).)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence. [Citations.] But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

## II. *ANALYSIS*

### A. *Motion to Augment the Record*

The Agency requests that we augment the record to include the following documents from D.H.'s dependency case: (1) detention report dated April 2, 2018; (2) jurisdiction report dated April 24, 2018; (3) addendum report dated August 15, 2018; and (4) minute order from the August 15, 2018, hearing in which the juvenile court found the ICWA did not apply in D.H.'s case. Mother urges that the augmentation request should be denied as untimely (rule 8.416(d)(2)), and because postjudgment evidence is disfavored.

6

(*In re Zeth S.* (2003) 31 Cal.4th 396, 405 ["It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' "].)

Generally, this court has authority to receive additional evidence (Code Civ. Proc., § 909) and augment the appellate record (rules 8.410(b) & 8.155(a); see *In re Christopher I.* (2003) 106 Cal.App.4th 533, 562). Appellate courts have granted requests to take additional evidence or augment the appellate record in juvenile dependency appeals from orders terminating parental rights to rebut claims that the juvenile court failed to comply with the ICWA. (*In re A.B.* (2008) 164 Cal.App.4th 832, 841 ["admission of the evidence to affirm the judgment would promote the finality of the judgment and prevent further delay"].)

For purposes of deciding the motion to augment, on our own motion, we take judicial notice of the documents in the Agency's augmentation request. (*Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 235-236, fns. 2 & 3 [appellate court on its own motion may take judicial notice of records of other cases].) We note that the Agency conducted its ICWA inquiry in the sibling's case, and the juvenile court rendered its decision, in 2018 before the changes in the ICWA statutes became effective. The version of sections 224.2 and 224.3 in existence when the juvenile court decided the sibling's case did not require a due diligence finding. The law at that time stated that a member of the child's extended family might provide information suggesting the child is a member of a tribe or eligible for membership in a tribe but it did not contain a "duty to inquire" by "asking . . . extended family members." (§ 224.2, subd. (b), compare former §§ 224.2 & 224.3.)

7

Our review of the documents in the Agency's augmentation request reveals that the Agency's ICWA inquiry in the sibling's case did not comport with the standards required by the current ICWA statutes.  Accordingly, we deny the augmentation request.

B. *Insufficient Initial Inquiry Requires a Conditional Reversal*

The Agency has an initial duty to inquire whether a child is an Indian child, including but, "not limited to, asking the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child, *and the party reporting child abuse or neglect*, whether the child is, or may be, an Indian child. . . ." (§ 224.2, subd. (b), italics added; see also rule 5.481(a).)  Mother claims that the Agency failed to inquiry of the reporting party, paternal grandmother, and maternal grandmother.  The Agency contends that it conducted a sufficient initial inquiry and that the duty of further inquiry was never triggered because the parents did not claim any significant Indian ancestry or tribal affiliation.  As we shall explain, the Agency's initial inquiry did not comport with current law.

The reporting party relayed information to the Agency regarding Mother's erratic behavior and positive toxicology results after Mother gave birth to K.W.  This information strongly suggests that the reporting party worked at the hospital where Mother gave birth and that this individual would not have any information regarding the parents' potential Indian ancestry.  Although section 224.2, subdivision (b), provides that the duty of initial inquiry includes asking the reporting party, which the Agency did not do, the law does not require idle acts.  (Civ. Code, § 3532; *People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 48.)  "To hold otherwise [on this record] would do violence to the principle that the law does not require idle acts."  (*Webber v. Webber* (1948) 33 Cal.2d 153, 164.)  Requiring the Agency to

8

contact the reporting party, on this record, would amount to an idle act squandering the Agency's resources.

The Agency's initial duty to inquire expressly requires it to ask extended family members, such as the paternal and maternal grandmothers, about possible Indian ancestry. (§ 224.2, subd. (b); *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 ["CFS nevertheless failed its duty of inquiry by not asking 'extended family members' "]; *In re Darian R.* (2022) ___ Cal.App.5th ___, ___, 2022 WL 556905, *4 [same]; *In re H.V.* (2022) 75 Cal.App.5th 433, 437 [same]; *In re A.C.* (2022) ___ Cal.App.5th ___, ___, 2022 WL630860, at *4 [same].) The Agency is mistaken that speaking to extended family members falls under the duty of further inquiry.[7]

In addition, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or *has reason to know* that the child is an Indian child" (§ 224.2, subd. (c), italics added), and "[o]rder the parent . . . to complete" the Form ICWA-020. (Rule 5.481(a)(2)(C).) Here, the juvenile court failed to order the parents to complete the Form ICWA-020 and failed to inquire of the parents at their first appearance whether they knew or had reason to know that K.W. is an Indian child. (§ 224.2, subd. (c); rule 5.481(a)(2) (A) & (C). Nor did the juvenile court inquire of the parents at any subsequent hearing.

Although Father denied Indian ancestry, this denial does not "relieve[] the [Agency] of its broad duty to seek that information from 'all relevant'

---

[7] If the Agency's initial inquiry under section 224.2, subdivision (b), gives it reason to believe that an Indian child may be involved in a proceeding, the Agency must make "further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).) This further inquiry includes, among other things, "[i]nterviewing the parents . . . and extended family members. . . ." (§ 224.2, subd. (e)(2)(A).)

individuals . . . Such a rule ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554; *In re S.R.* (2021) 64 Cal.App.5th 303, 314 ["the children's parents apparently had no idea of their family's connection to the . . . tribe . . ., even though the children's great-grandmother was a member"].) The point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child is to obtain information a parent may not have. (*In re Y.W., supra*, at p. 556.) "It is unreasonable to require a parent to make an affirmative representation of Indian ancestry where the [Agency's] failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim." (*Ibid.*)

Nothing in the record suggests that the Agency ever attempted to contact the maternal grandmother even though Mother stated " 'I'm Native American, but I have very little percentage.' " Mother informed the Agency that she had contact with the maternal grandmother as recent as five months before giving birth to K.W. Despite claiming Indian ancestry through the maternal grandmother, the record is silent whether the social worker asked Mother for the maternal grandmother's telephone number or address. Additionally, although the Agency spoke to the paternal grandmother, the record is silent whether it ever asked her regarding any possible Indian ancestry. While the Agency is not required to " 'cast about' for investigative leads" (*In re A.M.* (2020) 47 Cal.App.5th 303, 323), here "there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M., supra*, 70 Cal.App.5th at p. 744.)

Finally, before the juvenile court can make a finding that the ICWA does not apply it must find that "due diligence as required in this section have been conducted." (§ 224.2, subd. (i)(2).) The juvenile court never made this required finding. In sum, given Mother's statement of possible Indian ancestry, and the multiple failures of the Agency and juvenile court to comply with their statutory duties, we cannot conclude that the Agency's "failure to conduct *any* inquiry as to [M]other and [F]ather's extended family members was not prejudicial." (*In re A.C., supra,* ___ Cal.App.5th at p. ___, 2022 WL630860, *4.) Accordingly, we conditionally reverse and remand the matter for limited proceedings to determine ICWA compliance.[8] Although the delay in finalizing K.W.'s permanence is regrettable, the risk of collateral attack on a juvenile court judgment is "greater, and even more unacceptable,

---

[8] As aptly noted by the dissenting justice in *In re A.C., supra,* ___ Cal.App.5th ___, 2022 WL630860, "appellate courts have wrestled with the 'harmless error' doctrine in the context of inquiries by social workers and juvenile courts regarding a dependent child's potential Native American status" and [w]hat to do when such inquiries fall below enumerated statutory standards. . . ." (*Id.* at p. ___, 2022 WL630860, at *6 [conc. & dis. opn. of Crandall, J.].) The dissenting justice advocates placing the burden "on the appealing parent to make an affirmative representation of 'a reason to believe' that the child is an Indian child" to warrant a remand. (*Id.* at p. ___, 2022 WL630860, at *10; compare, *In re H.V., supra,* 75 Cal.App.5th at p. 438 [rejecting argument that mother has affirmative duty on appeal to support possible Indian ancestry and holding a failure to discharge first-step inquiry duty was prejudicial and reversible]; *In re Benjamin M., supra,* 70 Cal.App.5th at p. 744 [Where "the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child" a reviewing court "must reverse."].) We decline to address this debate and agree with the observation of the majority in *In re A.C.* that "the policy arguments the dissent so elegantly elucidates . . . are grist for the legislative mill." (*In re A.C., supra,* ___ Cal.App.5th at p. ___, 2022 WL 630860, at *5.)

if the agency foregoes basic inquiry into potentially meaningful, easily acquirable information." (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745.)

## DISPOSITION

The order terminating parental rights under section 366.26 is conditionally reversed and the matter is remanded to the juvenile court with directions that within 30 days of the remittitur the Agency must file (1) a completed Form ICWA-020 for each parent and (2) a report demonstrating its compliance with the inquiry provision of the ICWA and section 224.2, subdivision (b), consistent with this opinion and, if required, conduct further inquiry under section 224.2, subdivision (e). Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine if the Agency's investigation satisfied its affirmative duty to investigate. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If neither the Agency nor the juvenile court has reason to believe or to know that K.W. is an Indian child, the order terminating parental rights to K.W. shall be reinstated. Alternatively, if after completing the inquiry the Agency or the juvenile court has reason to believe that K.W. is an Indian child, the court shall proceed accordingly.

HUFFMAN, Acting P. J.

WE CONCUR:


AARON, J.


DO, J.