Filed 5/28/25

<u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>THE NORTH RIVER INSURANCE<br>COMPANY et al.,<br><br>    Defendants and Appellants. | F088076<br><br>(Super. Ct. No. CR-22-004262)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

Jefferson T. Stamp for Defendants and Appellants.

Thomas E. Boze, County Counsel, Serenity M. Wang, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

The North River Insurance Company and Bad Boys Bail Bonds (collectively, Surety), appeal the denial of their motion to set aside the forfeiture of and exonerate bail on Stanislaus County burglary charges pertaining to defendant Martin Marroquin.  The trial court denied the request because expected future costs associated with returning

Marroquin to custody in Stanislaus County from State Prison on other charges had not yet been incurred and Surety would not proactively agree to pay those costs. For the reasons set forth below, we reverse the order and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

In May 2022, Marroquin was arrested and charged with two counts of burglary in Stanislaus County. After being charged, Marroquin obtained Surety's services in posting his $40,000 bail. Marroquin was then released from custody and ordered to appear for further proceedings on July 14, 2022. Marroquin failed to appear on July 14, 2022, bail was forfeited in open court, and a bench warrant issued for Marroquin's arrest.

In line with required procedures, the clerk mailed a forfeiture notice to Surety on July 15, 2022. This triggered the 180-day statutory deadline for Surety to return Marroquin to custody or risk summary judgment on the forfeited bail. Shortly before this deadline arose, Surety moved the court on January 11, 2023, to toll the deadline because Marroquin was currently detained in the North Kern State Prison.

A declaration submitted by Surety showed that Marroquin had been arrested in Tuolumne County on June 27, 2022, and had been in custody since that time. The declaration noted that a warrant hold on the Stanislaus County charges had been placed on Marroquin and remained in place. The declaration also showed that Marroquin was transferred to North Kern State Prison on October 24, 2022, with parole eligibility date of June 2025 in the Tuolumne County charges.

The court agreed to toll the deadline and, upon a similar later motion, tolled it again through March 2024. Prior to this tolled deadline's expiration, Surety filed a motion to vacate the forfeiture and exonerate bail pursuant to Penal Code[1] section 1305, subdivision (c)(3), or, in the alternative, for additional tolling. At the time of this request,

---

[1] All statutory references are to the Penal Code.

2.

Marroquin had been transferred to a prison in Chino, California, and was eligible for parole in September 2025. The warrant hold remained on Marroquin.

The People opposed the request to vacate the forfeiture and exonerate bail on the ground that Marroquin could be transported back to Stanislaus County in the future and the People were entitled to the costs of such transport as a condition of granting the motion. To that point, however, the People had not transported Marroquin back to Stanislaus County and had provided no indication when transportation would be needed. The People wanted the request denied until Surety either stipulated to paying the costs or the costs were known.

The trial court ultimately denied the request to vacate the forfeiture and exonerate bail but did agree to further toll the deadline for returning Marroquin to custody until September 2025. At the hearing, the trial court expressed that it would have vacated the forfeiture and exonerated bail if the parties had resolved the transportation cost dispute, but refused to do so without resolving that issue.

This appeal timely followed.

## DISCUSSION

The dispute in this case arises from the interaction of two laws governing bail—sections 1305 and 1306. The first law discusses when and how a court first imposes forfeiture and then relieves a bailor from that forfeiture after the bailor has corrected a failure to appear. The second law identifies financial costs that must be recouped in that process. In this case, the trial court concluded that an open issue regarding the second law precluded application of the first. This was incorrect.

*Standard of Review and Applicable Law*

Under section 1305, when a defendant fails to appear without sufficient excuse, the "court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail." (§ 1305, subd. (a)(1).) "Once the bond is forfeited, the

3.

surety has 185 days to move to vacate the forfeiture.  (§ 1305, subds. (b)(1), (c).)  This is often called the 'appearance period.' " (*People v. The North River Ins. Co.* (2018) 31 Cal.App.5th 797, 804.)  Under the statutory scheme, this 185-day period may be extended once, up to an additional 180 days from the date the trial court orders the extension. (*People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 46-47.)  In addition, when a defendant is temporarily disabled due to "detention by military or civil authorities" (§ 1305, subd. (e)(1)(A)) and unable to "appear in court during the remainder of the 180-day period," (§ 1305, subd. (e)(1)(B)) the court "shall order the tolling of the 180-day period ... during the period of temporary disability."  (§ 1305, subd. (e)(1).)[2]  If the forfeiture is to be set aside, the surety must act within the extended or tolled period.

Under section 1305, subdivision (c), there are three scenarios in which the defendant is functionally returned to custody while within the jurisdiction of the court which will support vacating the forfeiture and exonerating bail.[3]  First, if the defendant "appears either voluntarily or in custody after surrender or arrest in court" the trial court must vacate the forfeiture "on its own motion at the time the defendant first appears in court on the case in which the forfeiture was entered."  (§ 1305, subd. (c)(1).)  Second, if the defendant "is surrendered to custody by the bail or is arrested in the underlying case … and is subsequently released from custody prior to an appearance" the trial court must again vacate the forfeiture on its own motion.  (§ 1305, subd. (c)(2).)  In both of these scenarios, if the court fails to act on its own motion the forfeiture is vacated and bail exonerated as a matter of law.  (§ 1305, subds. (c)(1), (c)(2).)

Third, and relevant to this case, if "outside the county where the case is located, the defendant is surrendered to custody by the bail or is arrested in the underlying case ...

---

[2]     Neither party raises issues with the substantial tolling that occurred in this case. This court takes no position on whether such tolling was proper.

[3]     Section 1305, subdivisions (f) and (g) provide additional rules for when a defendant is found outside the jurisdiction of the state or court but are not relevant here.

the court shall vacate the forfeiture and exonerate the bail." (§ 1305, subd. (c)(3).) "As used in this section, 'arrest' includes a hold placed on the defendant in the underlying case while he or she is in custody on other charges." (§ 1305, subd. (i).)

Under section 1306, as relevant to this case, "[i]f a court grants relief from bail forfeiture, it shall impose a monetary payment as a condition of relief to compensate the people for the costs of returning a defendant to custody pursuant to Section 1305, except for cases where the court determines that in the best interest of justice no costs should be imposed. The amount imposed shall reflect the actual costs of returning the defendant to custody." (§ 1306, subd. (b).)

" 'Certain fixed legal principles guide us in the construction of bail statutes. The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citation.] Thus, sections 1305 and 1306 must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture.' [Citation.] ... [¶] ... 'Ordinarily, appellate courts review an order denying a motion to vacate the forfeiture of a bail bond under an abuse of discretion standard. [Citation.] When the appellate court is deciding only legal issues, however, such as jurisdictional questions and matters of statutory interpretation, the abuse of discretion standard does not apply. [Citation.] When the facts are undisputed and only legal issues are involved, appellate courts conduct an independent review.' " (*People v. The North River Ins. Co., supra,* 31 Cal.App.5th at p. 804.) The strict construction requirement " 'compels us to protect the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking

release from custody, in order to obtain the corporate bond.' " (*People v. American Contractors Indemnity Co.* (2015) 238 Cal.App.4th 1041, 1044.)[4]

*The Court Must Vacate a Forfeiture and Exonerate Bail When Section 1305 Is Met*

The trial court denied Surety's request to set aside the forfeiture and exonerate bail because additional future costs associated with transporting Marroquin were not settled at that time. This analysis essentially reads section 1306, subdivision (b), to prevent application of section 1305, subdivision (c), until all issues under section 1306 are resolved. This is not a correct reading of the statutory scheme.

Before proceeding, it is important to note what is not contested in this case. The parties accept that bail was properly and correctly forfeited when Marroquin did not appear. The parties further accept that Marroquin was arrested in the present case, outside of the county where this case was located, when a hold related to this Stanislaus County case was placed on Marroquin while he was in custody in Tuolumne County. The parties acknowledge that this hold was initially placed within the original 185-day appearance period and that it has been continuously held since. Finally, there is no argument that Marroquin has been returned to Stanislaus County under the warrant issued for his failure to appear or for any further proceedings in Stanislaus County over the last few years.

The issue in this case is whether there is a need to harmonize the pronouncement in section 1305 that the court "shall vacate the forfeiture and exonerate the bail" after a defendant is arrested outside of the county with the pronouncement in section 1306 that

---

[4]    The certificate of interested entities or persons included in Surety's opening brief listed the indemnitor on the $40,000 bail bond as such a person and described him as a friend of Marroquin. (See Cal. Rules of Court, rule 8.208(e)(2) [certificate must identify persons that have "a financial or other interest in the outcome of the proceeding"].)  Thus, it appears an important justification for the strict construction requirement is present in this case. (Cf. *People v. Accredited Surety & Casualty Co., Inc.* (2022) 79 Cal.App.5th 656, 662, fn. 5 [surety's certificate did not list the indemnitor on the bail bond as a person with a financial interest in the outcome of the appeal].)

"[i]f a court grants relief from bail forfeiture, it shall impose a monetary payment as a condition of relief." (§ 1306, subd. (b).)

Looking next at the legislative history, subdivision (b) of section 1306 was adopted in 1991 while the first version of section 1305 to contain the relevant provisions of subdivision (c) was adopted in 1994. (1991 Cal. Legis. Serv. Ch. 90 (Assem. Bill. No. 1297); 1994 Cal. Legis. Serv. Ch. 649 (Assem. Bill No. 3059).) Prior to 1994, section 1305 contained a less specific set of three resolutions: (1) if the defendant appeared, the court would vacate the forfeiture and exonerate bail on its own motion; (2) if the defendant was surrendered to custody, the court would vacate the forfeiture and exonerate bail on its own motion; and (3) in all other cases any order vacating the forfeiture required notice to the applicable prosecuting agency. (1993 Cal. Legis. Serv. Ch. 524 (Assem. Bill. No. 734).) Thus, in this initial enactment, the location at which the defendant was submitted to custody did not affect the court's obligation to vacate the forfeiture and exonerate bail on its own motion.

We begin with the plain language of the statutes. Both section 1305 and 1306 are phrased in terms of a mandatory obligation arising after a conditional clause. Thus, if the defendant is arrested outside of the county, the court shall vacate the forfeiture and exonerate the bail under section 1305. And if the court grants relief from bail forfeiture, it shall impose a condition on that relief under 1306. Read in this way, the plain meaning strongly supports Surety's position as each obligation only arises after a condition is met, with the obligation to vacate the forfeiture and exonerate the bail arising after the arrest and the obligation to impose a condition on relief from forfeiture arising only after that relief is granted.

Similarly, in adopting the 1994 version of subdivision (c), the legislative history describes the changes as requiring "the court, with respect to a defendant surrendered to custody by the bail or arrested in the underlying case within a specified period, on its own motion, to direct the order of forfeiture to be vacated and the bond exonerated if either (1)

7.

the defendant is surrendered or arrested within the county where the case is located and is subsequently released from custody prior to an appearance in court, or (2) the defendant is surrendered or arrested outside the county where the case is located." (1994 Cal. Legis. Serv. Ch. 649 (Assem. Bill. No. 3059).) In all relevant discussions of the statute reviewed by the court, the general intent of the bill is stated as requiring a nearly automatic vacation of forfeiture and exoneration of bail when a defendant is arrested, regardless of the location of the arrest. Although the text of the statute is not consistent with this understanding when a defendant is arrested outside of the county — reasonably so given the need for the court to learn of the arrest — the overall legislative history affirms that an arrest outside of the county should generally be treated in the same manner as an arrest and release within the county.[5] In other words, although the mechanisms may vary, the obligation to vacate the forfeiture and exonerate the bond are triggered regardless of where the defendant is found.

This general understanding is particularly relevant given that section 1306, subdivision (b), is applicable in all instances where a court grants relief from bail forfeiture. Thus, in instances where the defendant appears in court, in instances where the defendant is arrested in the county and released prior to an appearance, and in instances where the defendant is arrested in another county, the court is generally obligated to impose a monetary payment as a condition of relief which reflects the actual costs of returning the defendant to custody. As two of these scenarios are specifically identified as requiring the court act on its own motion or have the act occur as a matter of law, there is no persuasiveness to the People's contention that section 1305 does not

---

[5] Our Supreme Court has noted that these statements from the legislative history constituted a misreading of the text of the pending legislation with respect to the fact a motion is required under subdivision (c)(3). (*People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 310 fn. 7.) While the statements do misread the statute, they still provide some guidance with respect to this issue when viewed in light of the 1993 version and the overall understanding of the statutory scheme as it was being amended.

require relief from forfeiture merely because the defendant is arrested outside of the county and the People have not yet transported the defendant to the court.[6]

Nor do we find compelling the People's argument that a bond cannot be exonerated unless and until the surety pays for costs under section 1306. As the People note, section 1306, subdivision (b) allows the court to decline to impose costs in the interest of justice. Thus, only where such costs or other assessments are actually imposed — not just where they may exist — is the statutory delay in actually setting aside the forfeiture and exonerating bail until compliance with the order triggered. (See § 1305.2 [granting minimum of 30 days to pay any assessment imposed].) Moreover, there is no indication in the statutory scheme that where costs are imposed they must exclusively reimburse costs incurred. Rather, section 1306 only requires any costs imposed "reflect the actual costs of returning the defendant to custody." Such costs can be identified through general expenses for similar transfers and need not rely exclusively on already incurred charges.[7]

---

[6]     We note here a practical concern as well. Should a defendant be arrested outside the county for a serious crime (e.g., murder) during the appearance period, failure to read the statutory scheme as contemplating near immediate relief from a forfeiture and exoneration of bail would lead to the possibility that years (as in this case) or decades could pass before the defendant was actually transported back to the court for further proceedings, if such a transport ever occurred. Given the defendant is within the state's custody from the point of arrest, it seems incongruent to allow the state to force the surety to maintain a bail bond potentially indefinitely when in all other scenarios relief is nearly immediately provided, particularly given the fact that such a motion can only be filed while the court tolls the appearance window. (*People v. Indiana Lumbermens Mutual Ins. Co.*, *supra*, 49 Cal.4th at p. 313.) The continued delay and need to track proceedings would create an unnecessary burden on the court and the affected parties.

[7]     This court has previously held that certain wage and benefit costs associated with extradition are properly included in section 1306. (*People v. The North River Ins. Co.*, *supra*, 31 Cal.App.5th at p. 809.) Neither party challenges the imposition of transportation costs for transfers within the state and we take no position on their propriety.

Ultimately, the plain language and relevant legislative history demonstrate that once the conditions for setting aside a forfeiture and exonerating bail are met under section 1305, the court must act in line with that statute. Only upon granting relief may the court rely on section 1306 to condition relief upon a monetary payment reflecting the costs of returning the defendant to custody, if appropriate. If no such costs or other permitted assessments are supported, then the court must set aside the forfeiture and exonerate bail without imposing them. Here the trial court sought to resolve costs under section 1306 as a condition to granting relief under section 1305. This erroneous reading of the statutory scheme constitutes an abuse of discretion. (See *County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 316 [misinterpretation of a statute that results in trial court applying an incorrect rule of law is an abuse of discretion].)

## DISPOSITION

The order denying Surety's request to set aside the forfeiture and exonerate bail is reversed. The matter is remanded for additional proceedings consistent with this opinion. Costs are awarded to appellants.

FRANSON, J.

WE CONCUR:

LEVY, Acting P. J.

SMITH, J.

10.