Filed 1/18/24  P. v. Allegheny Casualty Co. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALLEGHENY CASUALTY COMPANY,<br><br>    Defendant and Appellant. | B320719;<br>B320481<br><br>(Los Angeles County<br>Super. Ct. Nos. OSJ2579; OSJ2580) |

APPEALS from orders of the Superior Court of Los Angeles County, Natalie P. Stone, Judge. Affirmed.

Law Office of John Rorabaugh and John Mark Rorabaugh for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Richard P. Chastang, Assistant County Counsel, and Michael J. Gordon, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Allegheny Casualty Company (Allegheny) appeals from two orders denying its motions to vacate forfeiture and exonerate two bail bonds and from the subsequent summary judgments entered against it. Allegheny contends the trial court lost jurisdiction over the bonds by failing to declare a forfeiture pursuant to Penal Code section 1305, subdivision (a),[1] when defendant Sharon Denise Huff failed to appear at a hearing in her criminal case on February 24, 2021. We conclude the trial court did not abuse its discretion in concluding that Huff was not ordered to personally appear on that date. Accordingly, we affirm the orders denying Allegheny's motions to vacate forfeiture and exonerate the bail bonds, and the orders entering summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Allegheny Posts a Bond to Secure Huff's Release from Custody for Two Separate Incidents*

In July 2018 Huff was charged by complaint in case No. 8LB0765001 with one count of misdemeanor willful infliction of corporal injury resulting in a traumatic condition upon a

---

[1] Statutory references are to the Penal Code unless otherwise noted.

victim[2] (§ 273.5, subd. (a).)[3]  Huff pleaded no contest, and the trial court placed her on three years' probation, including the condition that she obey all laws.

In April 2020 Huff was charged by complaint in case No. NA114285 with one felony count of willful infliction of corporal injury resulting in a traumatic condition upon a victim (§ 273.5, subd. (a)), one felony count of assault upon the person of another with a deadly weapon or instrument other than a firearm (§ 245, subd. (a)(1)), and one misdemeanor count of a willful and knowing violation of a protective order or stay-away court order (§ 166, subd. (c)(1).)  The trial court set bail at $120,000.

As a result of the new allegations against Huff, the trial court revoked probation in case No. 8LB0765001 and set Huff's bail at $50,000.  In June 2020 Allegheny, by and through its agent Sunrise Bail Bonds, posted bond No. ASIM-1801 in the amount of $120,000 for the release of Huff from custody in case No. NA114285, and posted bond No. AS50K-96045 in the amount of $50,000 in case No. 8LB0765001.  Accordingly, there are two bonds in this case involving Huff totaling $170,000.

Both cases were considered together by the trial court. Following several continuances, counsel for Huff informed the trial court[4] on January 21, 2021 that the "case is ready to resolve" but that "it's just been difficult bringing Ms. Huff into court due

---

[2]    We grant the People's request to augment the record to include the complaint in case No. 8LB0765001.  (Rules of Court, rule 8.155(a)(1)(A).)

[3]    Section 273.5, subdivision (a), is a wobbler, and is punishable as either a felony or misdemeanor.  (*People v. Villalba* (2023) 89 Cal.App.5th 659, 667.)

[4]    Judge Chet L. Taylor.

3

to her age and high risk. My request would be to return for preliminary setting [i.e., the date for setting the preliminary hearing] on February 24th with the necessary time waiver. I'm going to try my very best to have her before the court." The trial court confirmed that counsel was appearing under section 977, subdivision (b), and continued the hearing. The reporter's transcript does not reflect the trial court ordered in open court that Huff was to appear at the next hearing date. But its minute order entered on January 21, 2021 states, "[t]he court orders the defendant to appear on the next court date," which was February 24, 2021.

On February 24, 2021 counsel for Huff appeared, stated that he filed a section 977, subdivision (b) waiver, and requested the hearing be continued to April 13, 2021 because he was "just trying to get Ms. Huff in the building so she can take the people's offer." The trial court[5] indicated on the record that "I think under Emergency Rule 5(c)[6] I can allow you to waive the 60-day rule today based on the fact that you're 977(b)," and continued the matter to April 13, 2021.

On April 13, 2021 counsel for Huff advised the court that "we're ready to resolve this case. We have been for a very long time, but Ms. Huff's medical needs have prevented her from coming into court along with the risk of COVID. . . . At this point, I would ask for another setting date so I can try to get her in. . . .

---

[5]     Judge Debra A. Cole.

[6]     Under Emergency Rule 5(c)(3) the court was required to "accept defense counsel's representation that the defendant understands and agrees with waiving any right to appear unless the court has specific concerns in a particular matter about the validity of the waiver."

4

This case has been ready to resolve for a long time. It's just getting her into court. She lives in Vegas right now because she's getting medical attention there." In response, the People argued that "the People do want a [preliminary hearing] because we want her to come to court. . . . So at this point we either need to set it for prelim or I'd ask for a bench warrant or something because she's not coming to court even though we do want to resolve the case."

The trial court agreed with the People and set May 26, 2021 as the preliminary hearing date. The trial court advised Huff's counsel that "there is not going to be more time, counsel. . . . The defendant must be present on that court date. . . . Probation remains revoked. Bond to stand on that. We'll set it for probation violation hearing setting on that same day, May 26, 2021."

B.     *After Huff Fails To Appear, the Trial Court Orders Bail Forfeited, Denies the Motions to Discharge the Forfeiture Order and Exonerate Bail, and Enters Summary Judgment*

On May 26, 2021 counsel for Huff appeared and notified the trial court that he "lost contact with her." The trial court ordered bail forfeited in both cases because Huff did not appear despite the court's April 13, 2021 order directing her to appear on May 26. The court clerk mailed notice of the forfeiture orders to Allegheny and Sunrise Bail Bonds on June 4, 2021.

On November 5, 2021 Allegheny moved to discharge the forfeiture orders and exonerate bail. In its motions, Allegheny argued that the trial court lost jurisdiction over each bond when it failed to declare a forfeiture on February 24, 2021. (See § 1305, subd. (a)(1)(D) ["A court shall in open court declare forfeited the

5

undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear" on "[a]ny other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required"].) Allegheny filed supplemental briefs on January 25, 2022 arguing that "[t]he mere presence of a 977 waiver is not an excuse for the defendant's failure to appear" where the trial court ordered a defendant to appear. The record does not reflect the People filed an opposition brief to either motion, but the People were present at the hearing on Allegheny's motions.[7]

On March 11, 2022 the trial court[8] heard argument and denied the motions to vacate forfeiture and exonerate bail, and then subsequently entered summary judgment against Allegheny. (See § 1306, subd. (a) ["When any bond is forfeited and the period of time specified in Section 1305 has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound."].)[9] The clerk's notice of entry of judgments

---

[7] The People's failure to file a written opposition did not relieve Allegheny of its burden as the moving party to show it was entitled to relief. "Burden is upon the bonding company seeking to set aside the forfeiture to establish by competent evidence that its case falls within the four corners of these statutory requirements." (*People v. American Bankers Ins. Co.* (1992) 4 Cal.App.4th 348, 354; accord, *People v. American Surety Ins. Co.* (1999) 75 Cal.App.4th 719, 726.)

[8] Judge Natalie P. Stone.

[9] "'Summary judgment following a declaration of forfeiture is a consent judgment entered without a hearing pursuant to the terms of the bail bond.'" (*People v. Financial Casualty & Surety,*

6

on the forfeited bonds and demand for payment were entered on March 15, 2022 (case Nos. OSJ2579 and OSJ2580).[10]

Allegheny timely appealed. Because both appeals raise the identical issue, although as to two different bonds involving the same person, we consider the appeals together.

## DISCUSSION

A. *Governing Law and Standard of Review*

A bail bond ""'"is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.""'" (*People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 42.) When a person for whom a bail bond has been posted and against whom a criminal complaint has been filed fails to appear as required by law, the court must declare the bail forfeited. (§ 1305, subd. (a); see *County of Los Angeles v. Financial Casualty & Surety, Inc.* (2018) 5 Cal.5th 309, 312; *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657.)

---

*Inc.* (2021) 73 Cal.App.5th 33, 37, quoting *People v. The North River Ins. Co.* (2020) 53 Cal.App.5th 559, 567.) "The only issue in a challenge to the summary judgment is whether it was entered pursuant to the terms of the consent, which requires compliance with Penal Code sections 1305 and 1306." (*People v. American Contractors Indemnity Co.* (2004) 238 Cal.App.4th 653, 1047.)

[10] "While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the prosecutions and are civil in nature." (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 657.)

7

Section 1305, one of the provisions governing bail forfeiture, provides: "(a)(1) A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear for any of the following: [¶] (A) Arraignment. [¶] (B) Trial. [¶] (C) Judgment. [¶] (D) Any other occasion prior to the pronouncement of judgment if the defendant's presence in court is lawfully required. [¶] (E) To surrender himself or herself in execution of the judgment after appeal."

Once the court declares forfeiture as provided in section 1305 the surety that posted the bond has 180 days (plus five days for mailing) after the clerk of court mails a notice of forfeiture to move to vacate forfeiture and exonerate the bond. (§ 1305, subd. (c)(1); *People v. Lexington National Ins. Co.* (2007) 147 Cal.App.4th 1192, 1198 ["'When the bail has served its purpose, the surety will be "exonerated," i.e., released from the obligation. Exoneration normally occurs on termination of the proceedings in some manner or on return of the defendant to custody.'"].) Upon a showing of good cause, the court may extend this appearance period by no more than 180 days from the date the trial court orders the extension. (§ 1305.4; *People v. Financial Casualty & Surety, Inc., supra*, 2 Cal.5th at p. 44.)

If the forfeiture has not been set aside by the end of the appearance period, including any extension, "the court which has declared the forfeiture shall enter a summary judgment against each bondsman named in the bond in the amount for which the bondsman is bound." (§ 1306, subd. (a); *People v. American Contractors Indemnity Co., supra,* 33 Cal.4th at p. 657 ["The surety that posted the bond . . . has a statutory 'appearance' period in which either to produce the accused in court and have

8

the forfeiture set aside, or to demonstrate other circumstances requiring the court to vacate the forfeiture. If the forfeiture is not set aside by the end of the appearance period, the court is required to enter summary judgment against the surety."].)

If the trial court does not declare a forfeiture when required by section 1305, it loses jurisdiction over the bail bond and lacks authority to enter summary judgment against the bail bond company. (See *People v. Amwest Surety Ins. Co.* (2004) 125 Cal.App.4th 547, 550 ["We conclude the trial court's failure to declare a forfeiture in open court, as mandated by section 1305, subdivision (a), resulted in the court's loss of jurisdiction over the bail bond. Because the court did not have fundamental jurisdiction when it entered the summary judgment, the judgment was necessarily void, and subject to collateral attack at any time."]; accord, *People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 907 ["It follows from the foregoing that the court's failure to declare a forfeiture upon a nonappearance without sufficient excuse, either where no excuse is offered or where the finding of an excuse constitutes an abuse of discretion, deprives the court of jurisdiction to later declare a forfeiture."]; see also § 1305, subd. (a)(1)(D).) We strictly construe the applicable forfeiture statutes in favor of the surety in order to avoid the "harsh results" of forfeiture. (*People v. International Fidelity Ins. Co.* (2018) 20 Cal.App.5th 345, 354; *People v. The North River Ins. Co.* (2018) 31 Cal.App.5th 797, 804.)

A trial court's order granting or denying a motion to vacate the forfeiture of a bail bond is reviewed for abuse of discretion. (See *People v. Bankers Ins. Co.* (2010) 182 Cal.App.4th 582, 586-588 [applying abuse of discretion standard to "a record in conflict"

9

where reporter's transcript and clerk's minutes differed on whether forfeiture was ordered in open court].)

B.    *The Trial Court Properly Denied Allegheny's Motions Because Huff Was Not Required to Personally Appear on February 24, 2021*

Allegheny argues Huff was ordered to appear personally in court on February 24, 2021 by the trial court's January 21, 2021 minute order. In Allegheny's view, the trial court's failure to declare a forfeiture on February 24, 2021 resulted in the court's loss of jurisdiction over the bail bond and the summary judgment against it on March 11, 2022. We are unpersuaded. The trial court did not err in ruling that, notwithstanding the January 21, 2021 minute order, Huff had not been ordered to appear personally at the preliminary hearing setting date on February 24, 2021.

1.    *Huff Was Not Required By Statute To Be Present for the Preliminary Hearing Setting Date and Appeared Through Counsel*

"'[S]ection 977 requires a defendant to be present at the five fundamental proceedings and entitles [her] to be present at all others.'" (*People v. Gutierrez* (2003) 29 Cal.4th 1196, 1203, quoting *People v. Ochoa* (2001) 26 Cal.4th 398, 435.) Section 977, subdivision (b)(1), provides: "Except as provided in subdivision (c), in all cases in which a felony is charged, the accused shall be physically present at the [1] arraignment, [2] at the time of plea, [3] during the preliminary hearing, [4] during those portions of the trial when evidence is taken before the trier of fact, and [5] at the time of the imposition of sentence. The

10

accused shall be physically or remotely present at all other proceedings unless they waive their right to be physically or remotely present, with leave of court and with approval by defendant's counsel."

Subdivision (b)(2) of section 977 further provides that, "[t]he waiver of a defendant's right to be physically or remotely present may be in writing and filed with the court or, with the court's consent, may be entered personally by the defendant or by the defendant's counsel of record." (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 716 ["with respect to 'all other proceedings' at which the defendant seeks to be absent, the standard waiver form set out in section 977, subdivision (b)(2) contemplates a situation where a defendant is absent from *court*"].)

In this case, February 24, 2021 was the date for the setting of the preliminary hearing. A preliminary hearing setting date is not one of the five mandatory hearings where a defendant is required to be present. (See § 977, subd. (a); *People v. Safety National Casualty Corp., supra,* 62 Cal.4th at p. 716 ["The five mandatory proceedings described in the preceding sentence of section 977(b)(1) (arraignment, plea, preliminary hearing, trial, sentencing) reflect the Legislature's concern that the felony defendant be present at case-related proceedings that occur in open court."].) Further, there is no dispute that Huff's counsel had entered a valid section 977 waiver excusing Huff's absence at that hearing.

Huff's appearance could only be mandatory if she had been ordered to appear personally in court on February 24, 2021. As explained in *People v. Ranger Ins. Co.* (1992) 6 Cal.App.4th 1301, 1304: "A defendant's presence is 'lawfully required' when there is

11

'a specific court order commanding his appearance at a date and time certain' [citation] or when a defendant has notice because he or she is present when the date and time for a mandatory appearance are set, even though the court did not specifically order his or her personal presence."  Accordingly, we turn to whether Huff had been ordered to appear at the preliminary hearing setting date.

   2.    *Under the Circumstances Presented, the Reporter's Transcript Was Entitled to "Greater Credence" Than the January 21, 2021 Minute Order*

The minute order of January 21, 2021 states that, "[t]he court orders the defendant to appear on the next court date."  But that is not the end of the analysis.  As further explained below, in determining whether the minute order accurately reflected the proceedings for purposes of a bail forfeiture motion, the trial court could properly examine the reporter's transcript (which does not order Huff's personal appearance) to determine whether Huff was ordered to appear in court on the date in question.

In this context, a trial court is entitled to resolve a conflict between the clerk's minute order and the court reporter's transcript to determine which is "entitled to greater credence." (*People v. Bankers Ins. Co.* (2010) 182 Cal.App.4th 582, 586; *id.* at p. 588 ["We have a record in conflict on that issue, with a reporter's transcript, which does not indicate any bail forfeiture and clerk's minutes, which do"; resolving conflict in favor of reporter's transcript]; see *People v. Thompson* (2009) 180 Cal.App.4th 974, 978 ["When the record is in conflict and cannot be harmonized, "'. . . that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to

12

greater credence."""]; *In re Evans* (1945) 70 Cal.App.2d 213, 216 ["whether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case"]; *People v. Smith* (1983) 33 Cal.3d 596, 599 [same].)

The trial court's order denying Allegheny's motions to vacate forfeiture and exonerate the bail bonds does not explain its reasoning.  But when the trial court denied Allegheny's motions, it necessarily determined Huff had not been ordered to appear on February 24, 2021.  The trial court did not err.  Aside from the January 2021 minute order, there was nothing in the record before the trial court indicating that Huff had been ordered to appear at the February 24, 2021 preliminary hearing setting date.  The reporter's transcript for January 21, 2021 does not indicate the trial court verbally ordered Huff to appear personally at the next hearing date; that is, the trial court did not make such an order in open court with counsel present.  Further, as noted by the People, the January 21, 2021 transcript "includes what appears to be the entirety of the hearing . . . including the court calling the matter, the initial[] stated appearances by the parties, a short discussion about the status of the case, a request to continue the setting hearing to the next month, the court continuing the hearing to February 24, 2021, and farewell statements."  As in *People v. Bankers Ins. Co., supra,* 182 Cal.App.4th at p. 587, "There is nothing which suggests the reporter's transcript is in any way incomplete."  And Allegheny does not dispute the reporter's transcript is complete.

Under this scenario, the trial court reasonably concluded that where there is a conflict between the minute order and the reporter's transcript, that "the reporter's transcript [was] entitled

to greater credence" than the clerk's minute order. (*People v. Bankers Ins. Co., supra,* 182 Cal.App.4th at p. 586; see *In re P.A.* (2012) 211 Cal.App.4th 23, 30, fn. 4 ["'[c]onflicts between the reporter's and clerk's transcripts are generally presumed to be clerical in nature and resolved in favor of the reporter's transcript unless the particular circumstances dictate otherwise'"]; see also *In re T.G.* (2020) 58 Cal.App.5th 275, 298 fn. 20 ["Throughout our review of the record in these appeals, however, we have encountered minute orders that include findings that were not made or, on occasion, are in direct conflict with the statements as reported in the hearing transcripts. Even under better circumstances the record of the court's oral pronouncements prevails over conflicting minute orders."].)

Allegheny contends "the record is not in conflict," and that "[n]othing in the record conflicts with th[e] order to appear," but it does not persuasively explain why the trial court abused its discretion in ruling otherwise in light of the reporter's transcript. Allegheny further contends that "the minutes are 'no less a part of the record than the transcript of the oral proceedings,' and . . . are generally more accessible than a reporter's transcript." (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 713 fn. 3.) But as *People v. Bankers Ins. Co.* at page 587 to 588 observed, "the court in *Allegheny* was faced with a situation in which there was no reporter's transcript because no court reporter was present at the forfeiture of bail proceeding. The clerk's minutes reflected bail had been declared forfeited, but not that the declaration had been made in open court. . . . Thus, our case is distinguishable from *Allegheny.* We do not have a record silent on the issue of whether the declaration was made in open court. We have a record in conflict on that issue, with a

14

reporter's transcript, which does not indicate bail forfeiture and clerk's minutes, which do." As we explained above, the trial court here was entitled to resolve the conflict in the record between the reporter's transcript and the minute order on the issue of whether Huff was ordered on January 21, 2021 to appear at the February 26 hearing and determine the reporter's transcript was entitled to greater credence.

Indeed, the trial court could reasonably have concluded the January 21, 2021 minute order was simply incorrect.[11] By way of contrast, the trial court on April 13, 2021 unequivocally stated on the record that "[t]he defendant must be present" at the next hearing on May 26, 2021. This affirmative statement, which is consistent with the April 13, 2021 minute order requiring her to appear, was sufficient to "lawfully require" Huff's presence at the next hearing date. (See *People v. Lexington National Ins. Corp.* (2016) 1 Cal.App.5th 1144, 1149.) Thus, when Huff failed to appear on May 26, 2021 only then did the trial court order forfeiture of the bonds.

C.  *The Trial Court Properly Entered the Summary Judgments Against Allegheny*

As outlined above, the trial court did not abuse its discretion in concluding Huff was not ordered to personally

---

[11]     The record before us reflects that at least one other minute order was erroneous. The February 24, 2021 minute order states that, "Defendant is present in court." But the reporter's transcript clearly indicates Huff was not present and her counsel was "appearing 977(b) for defendant." In deciding the underlying motions, the trial court was entitled to resolve such conflicts in favor of the reporter's transcript.

appear at the preliminary hearing setting date on February 24, 2021.  Accordingly, the trial court properly denied Allegheny's motions to discharge forfeiture and exonerate bail, and properly entered summary judgment against Allegheny in each matter. (See § 1306, subd. (a); *People v. American Contractors Indemnity Co., supra*, 33 Cal.4th at p. 657; *People v. American Contractors Indemnity Co., supra,* 238 Cal.App.4th at p. 1047; *People v. Financial Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 378 ["If the forfeiture is not vacated, the trial court must then enter summary judgment against the surety for 'the amount of the bond plus costs.'"].)

## DISPOSITION

We affirm the orders of summary judgment and the trial court's orders denying Allegheny's motions to discharge forfeiture and exonerate bail.  The People are awarded their costs on appeal.

MARTINEZ, J.

We concur:


SEGAL, Acting P. J.          EVENSON, J.*

---

*          Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16